O. ELLIS, ADMINISTRATOR, v. D. B. PONTON.

1—A grantor of land with warranty of title is not, so long as his liability on his warranty remains, a competent witness for his grantee in an action to try the title to the land, brought against the grantee by a third party; but a release of such liability, made by the grantee to the grantor before the latter is called to testify, removes the incompetency of the grantor as a witness.    Any secret expectations entertained by such a witness, and founded on his testimony, are considerations which may properly affect his credibility, and are proper subject of comment to the jury, but do not render him incompetent to testify.

2—The case of Evans v. Pigg (28th Texas, 586), distinguished from this case and approved.

3—A judgment will not be disturbed in this court merely because the verdict on which it was based was not technically in due form, provided it responded to the issues and clearly ascertained the merits of the case.

4—Courts should never indulge the practice of hearing affidavits of jurors to assail their own verdict. The tendency of this practice is corrupting, and never promotive of justice.

5—A verdict is not vitiated because some person, without permission of the court, converses with a juror while the jury has a case under consideration. The court may fine such offending parties for contempt.

ERROR from Colorado. Tried below before the Hon. J. B. McFarland.

The material facts of the case will be found in the opinion of the court. The original plaintiff, J. J. Ballard, died pending the litigation, when Ellis, plaintiff in error, became his administrator.

*R. V. Cook,* for the plaintiff in error.—It seems clear from all the authorities that the court erred in permitting A. J. Ponton, the alleged fraudulent grantor, to testify for D. B. Ponton, his grantee, defendant below. The rule is laid down very distinctly in the case of Stall v. The Catskill Bank, 18 Wendell, 473 : " A witness who has any interest, either legal or equitable, in the event of the suit, however small that interest may be, is not a competent witness for the party in favor of whose success that interest may be."

" The legal principle upon which an interested witness is rejected as incompetent to give evidence in his own favor is, that his interest may induce him to testify to that which is untrue." (American Ch. Dig., 626.)

The pleadings of the plaintiff in the court below charge a fradulent combination between D. B. and A. J. Ponton, the proposed witness. The testimony to that point is full and very abundant.

That there was fraud in the conveyance from A. J. Ponton to the appellee, D. B. Ponton, was the very question at issue in the court below. Manifestly, then, A. J. Ponton's interest was wholly upon the side of the party offering him. And he

testified " under the full conviction and expectation that he would derive benefit from his own testimony." (Peyton v. Hallett, 1 Caines, 364; Innes v. Miller, 2 Dallas, 50; Moore v. Hitchcock, 4 Wendell, 296–7; The Trustees of Lansingburg v. Willard, 8 Johns. Rep., 428.)

As, therefore, it was set up, and we think proven, in the court below that the sale of the land by A. J. to D. B. Ponton was collusive and fraudulent, and " as regards the plaintiff and other creditors, a mere artifice," to enable him to screen his property, his interest was, in point of fact, the same as if he had made no sale to D. B. Ponton; *i. e.* he was actually the party in interest, testifying in his own behalf. The celebrated case of Roberts v. Anderson, 3 Johns. Ch. Rep., 375, seems to be conclusive on this point: " A person who has fraudulently acquired title to land and fraudulently conveyed it, though it be by quit claim deed and without covenants of warranty, is not a competent witness for his grantee in a suit brought against him by a person claiming it as a *bona fide* purchaser."

But it is claimed that the pretended release restored A. J. Ponton's competency to testify in the cause. We think it did not.

For even were it not obnoxious to the charge that it is the act of one conspirator to qualify his accomplice, in order through his testimony to whitewash the fraudulent transaction,—it is worthless on other grounds. Because: 1. The pretended release is without any consideration. " A release without consideration is void." (Jackson v. Stackhouse, 1 Cowen R., 126.)

2. There was no delivery. " It is not necessary that the release be actually delivered by the releasor into the hands of the releasee. It may be deposited in court for the use of the absent party, or it may be delivered to the wife for the use of the husband. But in all such cases, it has been held necessary that the delivery of the release be known to the witness at the time of giving his testimony." (1 Greenleaf on Ev., p. 468.)

" Any delivery of a release that falls short of giving the

witness notice of its execution, is, we think, insufficient to remove the objection of interest, and restore the competency of the witness." (Stall v. The Catskill Bank, 18 Wendell, 473.)

But the court is respectfully referred to the case of Evans v. Pigg, 28 Tex. R., 592, as conclusive to the point.

*Darden & Delany*, for the defendant in error.

LINDSAY, J.—In this contest, in an action of trespass to try title, the jury found for the appellee, and unless the court has committed some vital error in admitting improper evidence, or in the charge to the jury, this court ought not to disturb the verdict and judgment.

It is charged by the appellant that the deed of A. J. Ponton to the appellee, was made for the fraudulent purpose of hindering and delaying the creditors of A. J. Ponton in the collection of their debts; and that the grantor, A. J. Ponton, was not a competent witness for his grantee in an action against the grantee to try title. This is certainly a correct proposition of law. But when a release was executed by the grantee to his grantor against his warranty of title, it rendered him competent as a witness, and it was then a question of credibility, not competency. The release was exhibited on the trial before the witness testified. Being made a competent witness by the method pointed out by the law, whatever may have been the private convictions and expectations of the witness in giving his testimony, these considerations could only affect his credibility, which were legitimate subjects of comment in argument before the jury. The case cited from 3 Johns. Ch. Rep., 375, is not in point. In that case it was the fraudulent holder of a title, who fraudulently conveyed by a quit claim deed, and was denounced, in a suit in equity in a court of conscience, as an inadmissible witness in favor of his grantee. The chancellor does not say that the witness was absolutely incompetent, but the testimony was inadmissible because the witness was interested in supporting the title of the grantee. And having acquired the title fraudulently, and then selling and

conveying it to another, the witness, in that case, would have been liable to an action of deceit at the instance of the injured party, notwithstanding the conveyance without warranty. But even in that case, it is virtually conceded if the release, which was alleged to have been given had been produced, it would have restored the competency of the witness. The case is not analagous to the present.

Neither does the case of Evans v. Pigg, upon the question of notice of the release, apply to the facts of this case. Here, the release was presented and filed in open court in the cause, produced on the trial for the express purpose, and preparatory to the giving of his oral testimony by the witness. The case of Evans v. Pigg, 28 Texas, was a release, indorsed on a bill of sale, filed in the cause, and the deposition of the witness taken in another county to be read on the trial, without anything in the record of the case showing that witness ever heard or knew of any fact in the cause, except those upon which he was called to testify. In that case there was a sound reason for the rule so correctly laid down by the learned judge. But no such reason obtains in this case.

In regard to the verdict of the jury, though it be not technical, it is very comprehensive; and, if true, is quite responsive in settling the rights of these parties, both legal and equitable, in the subject matter of their litigation. It was an action of trespass to try title. The real claim of the plaintiff was founded upon the sale of the land under a deed of trust executed by A. J. Ponton on the 1st of August, 1857, to secure a debt of $167$\frac{63}{100}$ to the appellant. The claim of the appellee was based upon a deed from A. J. Ponton, dated the 10th of November, 1857, and acknowledged and recorded on the 17th of November, 1857. This last deed, as well as a bond for title, executed in June of the same year, was assailed by the appellant as fraudulent and void as to creditors. On the other hand, the deed of trust was assailed by the appellee, by producing before the jury a receipt of the appellant, showing that A. J. Ponton had paid him, prior to the trustee sale, the $167$\frac{63}{100}$

secured by the deed of trust, and thus sweeping, if true, the whole foundation of his title from under him. And if there was no indebtedness at the time to him, however fraudulent, as to creditors, might have been the deed from A. J. Ponton to D. B. Ponton, if *he* was not hindered and delayed by such conveyance, he had no right to become a volunteer advocate of the general creditors, and to seek to annul the title acquired by D. B. Ponton for their benefit. This was, substantially, about the issue made before the jury, who, upon hearing all the evidence, brought in this verdict: "We, the jury, find for the defendant, believing the receipt of J. J. Ballard liquidates all claims against A. J. Ponton up to that date," which receipt bears date anterior to the sale under the deed of trust, and calls for the precise number of dollars and cents as was set forth in the trust deed.

Now, the jury were the best judges of the truth or falsehood of the facts deposed before them. And if they believed that there was, in fact and in truth, no indebtedness subsisting between J. J. Ballard, the appellant, and A. J. Ponton, at the time of the trust sale, they could not have given a more appropriate and fitting verdict than they did. It struck at, and at once disposed of, the salient point in the controversy.

The improper conduct of the jury after their retirement is also urged as a ground of reversal. The affidavits of some of the jurors was taken in support of the motion for a new trial. The courts of the country ought never to indulge the practice of hearing the affidavits of jurors to assail their own verdicts. Its tendency is corrupting, and never promotive of justice. Because some person converses with a juror while the jury has a case under consideration, without permission of the court, it does not vitiate the verdict. At most, it only gives the court the right to fine both the juror and the person so intermeddling for contempt.

The court thinks there is no such error made manifest by this record as to require the reversal of the case. It is therefore affirmed.                    Affirmed.