### TURNER et al. v. MISSOURI, K. & T. RY. CO. OF TEXAS. (No. 5468.)†

(Court of Civil Appeals of Texas. San Antonio. May 12, 1915. Rehearing Denied June 9, 1915.)

1. RAILROADS ⬤=397—INJURIES TO LICENSEE—EVIDENCE—USE BY PUBLIC.

In an action for the death of a driver of a service automobile, who was killed when his automobile, standing too close to the defendant's house track, was struck by a train, evidence that the house track, which was between the depot and town, was habitually used by the

---

public for receiving and delivering freight and for other purposes, was admissible.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1344–1355; Dec. Dig. ⊚⇒397.]

**2. APPEAL AND ERROR ⊚⇒1056 — HARMLESS ERROR—EXCLUSION OF EVIDENCE—CURE BY VERDICT.**

The exclusion of such evidence was not prejudicial to plaintiff where substantially similar evidence was admitted, and the jury specially found that the defendant was negligent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. ⊚⇒1056.]

**3. APPEAL AND ERROR ⊚⇒742—ASSIGNMENT OF ERRORS—PROPOSITION AND STATEMENT.**

An assignment of error to the exclusion of such evidence, the proposition and statement under which related to evidence that other vehicles had been struck while on the house track, will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⊚⇒742.]

**4. APPEAL AND ERROR ⊚⇒742—ASSIGNMENTS OF ERROR—STATEMENT—SUFFICIENCY.**

Assignments of error, the first of which failed to state any evidence raising the issues thereby presented, and the others of which referred to the statement under the first assignment, though they raised different issues, will not be considered, since the evidence relied on to raise the issues in an assignment must be contained in the statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⊚⇒742.]

**5. TRIAL ⊚⇒261—SPECIAL ISSUES—REQUEST—INCORRECT DEFINITION.**

The court need not submit an issue specially requested where the definition accompanying the issue was incorrect.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 484, 660, 671, 673, 675; Dec. Dig. ⊚⇒261.]

**6. TRIAL ⊚⇒253—SPECIAL ISSUES—REQUEST—CONTRIBUTORY NEGLIGENCE.**

Where plaintiff requested correct issues as to contributory negligence and the court did not submit in any issue whether the acts of plaintiff's deceased were negligent, the requested issues should have been submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. ⊚⇒253.]

**7. APPEAL AND ERROR ⊚⇒1067 — HARMLESS ERROR—REFUSAL TO SUBMIT ISSUES.**

Plaintiff is not prejudiced by the refusal of the court to submit special issues as to contributory negligence requested by him, even if the request was necessary to entitle him to question the sufficiency of the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ⊚⇒1067.]

**8. TRIAL ⊚⇒350—SPECIAL ISSUES—EVIDENTIARY MATTERS.**

Special issues which related to merely evidentiary matters, most of which were undisputed and some of which were admitted by the pleadings, should not have been submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. §§ 350.]

**9. TRIAL ⊚⇒215—SPECIAL ISSUES—INSTRUCTIONS.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, providing that in submitting special issues the court shall submit such explanation and definition of legal terms as shall be necessary to enable the jury to render a proper verdict, a special charge given in an action for the death of the driver of a service automobile

at a railway depot, that the railroad did not owe the deceased any duty to keep its grounds lighted and free from obstructions, and that in determining whether defendant was negligent in the operation of its train they should not consider the condition of the grounds, was not proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 481; Dec. Dig. ⊚⇒215.]

**10. TRIAL ⊚⇒362 — SPECIAL ISSUES — INCONSISTENT ANSWERS—RETURN TO JURY.**

Where the jury first returned answers to special issues which were inconsistent, ·it was not error for the court to call their attention to the inconsistency and require them to return to their room and answer both issues alike.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 865–868; Dec. Dig. ⊚⇒362.]

**11. RAILROADS ⊚⇒400—INJURIES TO LICENSEES—CONTRIBUTORY NEGLIGENCE.**

The fact that the driver of a service automobile stopped his car at the depot platform in such a position that it was struck by a train on the house track, does not show contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ⊚⇒400.]

**12. NEGLIGENCE ⊚⇒142 — SPECIAL ISSUES — CONTRIBUTORY NEGLIGENCE.**

Where the court submitted special issues to the jury as follows: "Bearing in mind the definition of contributory negligence, did the acts of deceased or his failure to act contribute to his death, and did the certain acts of such deceased specified contribute to its death?" affirmative answers to such issues did not establish contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 400–403; Dec. Dig. ⊚⇒142.]

**13. APPEAL AND ERROR ⊚⇒934 — PRESUMPTIONS—SPECIAL VERDICT.**

Where plaintiffs requested the submission of proper issues as to contributory negligence, which were refused, no presumption on that issue will be indulged in aid of a judgment for the defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. ⊚⇒934.]

**14. APPEAL AND ERROR ⊚⇒934 — PRESUMPTIONS—SPECIAL VERDICT—NECESSITY OF REQUEST.**

It is not necessary for plaintiff to request the submission of special issues as to the matters of defense in order to escape the presumption of a finding adverse to him on such issues in support of a judgment for defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3782; Dec. Dig. ⊚⇒934.]

**15. APPEAL AND ERROR ⊚⇒1175—DISPOSITION OF THE CASE—RENDERING JUDGMENT—SPECIAL ISSUES.**

In an action for death where the special issues failed to require a finding that the acts of deceased, which contributed to his death, were negligent, but one of them was not objected to by the plaintiff on that ground, a judgment cannot be rendered on appeal for plaintiff on the special finding of defendant's negligence, but the case will be reversed and remanded for another trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. ⊚⇒1175.]

Appeal from District Court, Austin County; Frank S. Roberts, Judge.

Action by Sallie Turner and others against the Missouri, Kansas & Texas Railway Com-

pany of Texas. From a judgment for defendant, rendered on special findings by the jury, the plaintiffs appeal. Reversed and remanded.

C. G. Krueger and Williams & Williams, all of Bellville, for appellants. C. C. Huff and A. H. McKnight, both of Dallas, and Lane, Wolters & Storey and Paul Kayser, all of Houston, for appellee.

MOURSUND, J. Appellants' statement of the nature of the pleadings is not objected to, and is adopted by us:

Appellants, Sallie Turner, wife of C. B. Turner, deceased, for herself and as next friend for her minor children, Cecil Turner and Alberta Vivian Turner, by C. B. Turner, deceased, their father, and Mrs. Lizzie Turner, mother of deceased, C. B. Turner, brought this suit in Austin county, Tex., on the 25th day of February, 1914, against the defendant, Missouri, Kansas & Texas Railway Company of Texas, for the sum of $40,000, and on the 4th day of June, 1914, appellants filed their first amended original petition against said defendant, upon which petition and defendant's answer thereto filed on the same date this cause was tried.

Appellants alleged in their said amended petition that they and each of them had been damaged by the defendant in the sum of $40,000, by reason of the negligent acts of the defendant in the town of Sealy, Austin county, Tex., which negligence resulted in the death of the said C. B. Turner on or about the 25th day of October, 1913; that said injuries, which resulted in said death, were inflicted upon the deceased on or about the 21st day of October, 1913. Appellants, in substance, alleged that the deceased was killed near the passenger depot of the defendant in the town of Sealy, on a very dark night between 9 and 10 o'clock. That said depot was situated between the main line and the house track; that the house track lay between the town and the depot, and the top of the rails all along by the side of the depot on the house track were practically level with the ground, and that said house track for a considerable distance along by the side of the depot and at each end of the depot was used as a public walk and passageway for passengers and freight. That said depot was a combination freight and passenger depot, and that all freight of every description received at or carried from said depot was hauled and carried across the house track, and that it was customary and had been for many years for draymen, deliverymen, baggagemen and mail carriers to drive their drays, hacks, automobiles, and wagons upon and across said house track along by the side of and at the ends of said depot, and that the defendants, its agents and employés knew of such custom.

That the deceased, C. B. Turner, was operating a service automobile in the town of Sealy, and had been for a long time. That his business was carrying passengers to and from the depot. That on the night of the injury which resulted in his death, he had carried an automobile load of passengers to the depot, which passengers intended and did, a short time after his injury, take passage on the passenger trains of the defendant. That at the time of said injury, said passenger trains were about due in the town of Sealy, and that the deceased was expecting other passengers to get off at Sealy and intended to haul them to the hotels and other destinations, and that deceased was especially looking for one person on the train with whom he had personal business. That he drove his automobile along the accustomed road to the defendant's depot and drove across the house track at the south or east end of the depot and left his automobile standing by the side of the wharf or platform, and that the back end of said automobile did not sufficiently clear the house track to permit cars being operated upon the same. That after he had unloaded his passengers and had gone around to the front of the depot, he came back to a point at the south or east end of the depot, near a little yard and hollooed and asked a negro porter, who had ridden up with him, whether or not there was a train coming in on the house track, and he, together with the negro, went to the automobile and was attempting to push the same forward when the freight train backed in at a rapid rate of speed, without any light or brakeman on the rear end thereof, and ran against the back end of his automobile which knocked the same around and jerked the front end of it in towards the track and caught the deceased between the automobile and the freight car being propelled by the defendant, and dragged and pulled deceased along some distance, crushed and injured him in such a way that he died on or about the 25th day of October, 1913.

Appellants allege that there was no mode provided for crossing and approaching the defendant's track in front of the depot. That the defendant was negligent in having several tracks with rails elevated above the ground, which would not permit passage of vehicles for several hundred yards in front of the depot, and in building the depot between the house track and the main line, thus requiring the use of the house track as a public thoroughfare, wharf and passageway, as above set forth. That the defendant was negligent in not having the depot properly lighted. That it was negligent in having coal bins, a pump station, water tank, and other outhouses near to the house track, thereby excluding vision from persons propelling trains approaching the depot on the house track. That it was negligent in propelling said train in on the house track at the time and in the manner that it did at a dangerous and hazardous rate of speed, not knowing whether it could safely do so. That it was negligent in not having a brakeman or watchman on the back end of said train coming in on the house track. That it was negligent in not ringing the bell and blowing the whistle so as to advise persons on the house track along by the depot. That it was negligent in not having a light on the back end of the train so that persons crossing upon the house track all along by the depot could see it.

Appellants further alleged that the defendant, its agents and employés discovered the perilous position of deceased and his automobile in time to have prevented injury to either by the ordinary use of the means at hand at the time and failed to do so, and was negligent in not preventing the injury to the deceased and to the machine. Appellants alleged that the automobile of the deceased was injured and damaged to the extent of $1,000, for which they sue.

The defendant denied each and all of the acts of negligence charged by the appellants, and especially denied that they were negligent in propelling the train of cars along the house track that collided with the automobile of the deceased and that resulted in his death. The defendant further specially denied that said train was being operated at a dangerous or hazardous rate of speed, and alleged that the same was under perfect control. Defendants further alleged that it did have a switchman with a light on the back end of the train, and that the switchman was standing near the rear end of the hind car with a lantern, and was watching and looking straight at and along the track by the side of the depot where deceased's car was collided with, and that deceased was guilty of contributory negligence in leaving his car that near the track and in going to same and trying to move it.

At defendant's request, the case was submitted upon special issues which, with the answers of the jury thereto, are as follows:

Special Issue No. 1:
"Bearing in mind the definition of negligence hereinbefore given, and the duty of said defendant as above defined in paragraph 10, you will determine from the evidence and answer the following questions:

(a) "Was the defendant company guilty of negligence in operating and moving its train on said house track at the time of the alleged injury that resulted in the death of A. B. Turner?" Answer: "Yes."

(b) "If you answer the above question (a), Special Issue No. 1, 'Yes,' then was said negligence the direct and proximate cause of the injury that resulted in the said death of A. B. Turner?" Answer: "Yes."

Special Issue No. 2:
"Bearing in mind the definition of contributory negligence hereinbefore defined, you will answer the following question: Under all the attending circumstances at the time of the alleged injury, did the acts of the deceased or his failure to act concurring with, or co-operating with the acts of the defendant contribute to his alleged injuries that resulted in his death?" Answer: "Yes."

Special Issue A:
"Did deceased, A. B. Turner, leave his automobile so that it did not clear the house track?" Answer: "Yes."

Special Issue B:
"Was there room in the passageway between the park fence and the depot platform for the deceased to have driven his automobile so that it would have cleared the railroad track?" Answer: "Yes."

Special Issue C:
"Did the deceased hear or see the train approach his automobile while he was on the north side of the park fence?" Answer: "Yes."

Special Issue D:
"Did the deceased halloo to the trainmen before going to his automobile?" Answer: "No."

Special Issue E:
"Was deceased going toward his automobile at the time of hallooing to the trainmen?" Answer: "Yes."

Special Issue F:
"If you have answered 'Yes' to either question C, D, or E, then answer this question: If deceased had remained where he was when he saw or heard the train approach his automobile, or hallooed to the trainmen, would he have been injured?" Answer: "No."

Special Issue G:
"Did deceased place himself in a position of danger when he went to his automobile, if you have answered that he did go to his automobile?" Answer: "No."

Special Issue H:
"Did deceased undertake to move his automobile while the train was approaching it?" Answer: "Yes."

Special Issue I:
"If you have answered 'Yes' to the foregoing question in Special Issue H, then answer this one: Did the deceased know the train was approaching when he began to try to move his automobile?" Answer: "Yes."

Special Issue J:
"If you have answered 'Yes' to questions C, D, E, F, G, and H, then answer this question: Did the acts of deceased in going to his automobile and undertaking to move it while the train was approaching contribute to his injury and death?" Answer: "Yes."

In answer to instructions to find what amount of damages was suffered by the respective plaintiffs in case the court should determine to enter judgment for them upon the jury's answers to the issues, the jury assessed the damages to Mrs. Lizzie Turner at $2,000, to Mrs. Sallie Turner at $8,000 for the death of her husband, and $1,000 for damages to the automobile, and to the children, Alberta and Cecil Turner, respectively, at $5,000 and $4,000.

The court entered judgment for the defendants.

[1, 2] The first and third assignments of error complain of the refusal of the court to permit the introduction of testimony to the effect that the house track from the place where the accident occurred back to the platform of the freight depot, a distance of about 150 feet, was habitually and almost continuously used by the public in receiving and delivering freight and for other purposes. This testimony was clearly admissible. However, substantially, the same testimony was admitted, and in view of the jury's findings of negligence on the part of defendant, the error in excluding the testimony was harmless.

[3] The second assignment complains of the exclusion of exactly the same kind of evidence as that covered by the first and third assignments; but the proposition and statement attempt to require us to determine the admissibility of testimony to the effect that other vehicles had been run into and crushed upon the house track near the place where the automobile of deceased was standing when struck by the train. As briefed, the assignment must be overruled.

[4] Assignments 4 to 8 inclusive, 10 and 12 will not be considered, because the statements are insufficient. Under the fourth a statement is made which fails to state any evidence raising the issue, and all the other assignments are accompanied by a reference to the statement under No. 4 for statement, although relating to different issues. The evidence relied upon to raise the issues sought to be submitted must be contained in the statements.

[5] The thirteenth assignment is overruled. The definition accompanying the issue was incorrect in using the expression, "or by the use of ordinary care could have discovered deceased and his automobile," and the court was, therefore, not required to submit the issue. T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410.

[6, 7] The fourteenth and fifteenth assignments complain of the refusal of the court to submit special issues raising questions of contributory negligence. These issues were properly drawn and should have been submitted, for the reason that the court did not submit in any of his questions the issue whether the acts of the deceased constituted negligence. However, we do not think it is error of which the plaintiffs can complain. They are not injured by the failure of the court to submit the defensive issues. If it be necessary for them to request their submission in order to avail themselves of the right

to question the sufficiency of the verdict as returned, and to prevent any presumptions of a finding by the court from being indulged, in aid of the judgment, they can show that they made the request.

The sixteenth assignment is too general, and will not be considered.

[8] Assignments 17 to 25 inclusive, respectively complain of the submission of special issues A, B, C, D, E, F, G, and H. All of these issues should not have been submitted. They related to merely evidentiary matters, most of which were undisputed, and some were admitted in the sworn pleadings of both parties. To ask the jury to go out and seriously deliberate on the question whether Turner would have been injured if he had stayed where he was when he saw or heard the train approach, served no useful purpose, to say the least. The assignments are sustained.

By the twenty-sixth assignment complaint is made of the submission of special issue J, which was objected to on several grounds, one of which was that it failed to inquire whether Turner's acts constituted negligence. The objections to these issues are so obviously good that it is unnecessary to discuss them. Questions which serve no useful purpose should not be submitted as they only tend to confuse and mislead the jury. The assignment is sustained.

[9] By the twenty-seventh assignment complaint is made of the giving, at defendant's request, of the following special charge:

"You are instructed that the defendant did not owe to the deceased, A. B. Turner, on the occasion of his visit to defendant's depot, when the accident occurred, any duty to keep its depot and surrounding grounds lighted or free from any obstructions, or in a safe condition, and in determining whether defendant was negligent in the manner in which its train was operated at the time of the accident, you will not consider the depot and the surrounding grounds and conditions thereof."

This charge should not have been given. When a case is submitted upon special issues, the court is authorized to submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon the issues submitted. Article 1984a, Sayles' Statutes 1914. The court gave such definition as he deemed necessary, and was not authorized to give said special charge because it was not only unnecessary to the proper consideration of the only issue of negligence submitted, but in addition was apt to mislead the jury in the consideration of such issue. It is impossible to see why the jury, in deciding whether there was negligence in the manner in which the train was operated, should be precluded from considering the location of the depot, the surrounding grounds, and the conditions thereof. Had the issue been submitted, whether Turner's acts constituted negligence, this charge might exercise a potent influence in the decision of that question, for if no obligations with regard to the running of trains arise from the situation of the house track and its known use by the public, Turner's acts in leaving his automobile partly on the track and attempting to move it with a train coming down the track might impress the jury as those of an imprudent man. We do not think the verdict can be construed as a finding that Turner was guilty of contributory negligence; but if it could, this special charge is of such a damaging character that the giving thereof should of itself require a reversal of the judgment. We sustain the assignment upon the ground that the charge was not a proper one to be given in a case submitted on special issues, and that it is prejudicial upon its face. Other questions sought to be raised, the determination of which is dependent upon the evidence adduced, will not be decided, because there is no sufficient statement accompanying the assignment.

[10] When the jury first returned its verdict, special issue J was answered "No," whereupon the court orally instructed the jury that its answers to issues 2 and J were conflicting, and that both questions should be answered alike. The jury was again retired, and afterwards returned its verdict answering both issues, "Yes." This verdict was received and filed. These proceedings were objected to by both parties, and by assignments Nos. 28 and 29 appellants complain thereof. The charge should have been in writing, but we think it was permissible for the court to require further consideration of the issues by the jury, and that no error is shown which would require a reversal even if issue No. J were a material one. However, we believe that issues 2 and J, although answered "Yes," furnish no basis for judgment for defendant, because there is no finding that Turner's acts constituted negligence, and therefore appellants have not been harmed by the proceedings complained of. The assignments are overruled.

[11] By the thirtieth assignment appellant asserts that the court erred in rendering judgment for defendant, the contention being that the jury having found that the automobile was damaged to the extent of $1,000, on account of the negligence of defendant, and there being no finding that Turner was guilty of contributory negligence in leaving the automobile on the track, judgment should not have been rendered for defendant. Plaintiffs requested the court to submit the issue whether Turner was guilty of contributory negligence in having his car at the place where it was struck by defendant. The request was refused. There is no finding of contributory negligence in leaving the car where it was standing when struck. Appellees, although they did not request the court to find as a matter of law that leaving the car partly upon the track constituted contributory negligence, and instruct the jury that no recov-

ery could be had for the damage to the car, now contend that the answer to special issue B shows that Turner was guilty of contributory negligence as a matter of law. The evidence was undisputed upon the question asked in special issue B, but we do not think that failing to clear the track with the car can be said to constitute contributory negligence as a matter of law. The assignment is sustained.

[12] The thirty-first assignment is also directed at the rendition of judgment for defendant, while in the thirty-second the failure to render judgment for plaintiffs, upon the verdict returned, is alleged to constitute error. In answer to special issue No. 2 the jury found that the acts of Turner or his failure to act contributed to cause the injuries resulting in his death. In answer to issue J the jury found that the act of Turner in going to his automobile and undertaking to move it while the train was approaching contributed to his injury and death. The answers to the other issues add nothing to the verdict. Plaintiffs objected to issue J because it did not require a finding, whether the act of Turner in going to his car constituted negligence, and asked the submission of two special issues properly drawn relating to contributory negligence, but the court refused the request. Defendant contends that, in view of the reference to the definition of contributory negligence which was made as a preliminary to the question asked in special issue 2, it should be presumed that the jury, in answering the question, actually decided that the acts of Turner constituted negligence. It would be going into the domain of speculation to indulge such a presumption. The jury may have done that very thing, then again they may have confined themselves to answering the very question asked. We are of the opinion that the verdict cannot be construed as a finding that Turner was guilty of contributory negligence, to say nothing about a finding that contributory negligence was the proximate cause of Turner's death. The conclusion follows that the verdict does not support the judgment.

[13] Plaintiffs requested the submission of two issues properly presenting questions of contributory negligence, which the court refused to give. Therefore no presumptions will be indulged in aid of the judgment on the theory that there were issues of fact not requested to be submitted, which should be determined in favor of the judgment.

[14] However, we do not wish to be understood as holding that it is incumbent upon plaintiffs to see that defenses are submitted, or that they can be placed in the position of being forced to ask the submission of defensive issues, and thereby estop themselves from contending there is no evidence to justify their submission, or else run the risk of the appellate courts holding that there was evidence to support an adverse finding on a defense, and make such finding to support a judgment rendered by the court in the belief that the verdict required such judgment. The statute was intended for the purpose of assisting insufficient verdicts, not for the purpose of defeating such as may be returned. The assignments are sustained.

The thirty-fourth, thirty-fifth, and thirty-sixth assignments are too general to require consideration.

Assignments 9, 11, and 33 are waived.

[15] Appellants urge that having secured a verdict to the effect that defendant was guilty of negligence, which was the proximate cause of Turner's death, and defendant having failed to secure a finding that Turner was guilty of contributory negligence which was the proximate cause of his death, judgment should be entered in this court in favor of appellants. We doubt whether it would be proper for us to render judgment even had plaintiffs done all they should have done to prevent the case going to the jury upon questions not presenting the issue of contributory negligence, but in this case plaintiffs failed to object to special issue No. 2, and while their failure to object does not cure the defect in the verdict, still by failing to object they permitted the court to think he had in fact submitted the issue of contributory negligence. Under the circumstances, we conclude that the judgment should be reversed, and the cause remanded for another trial.

Judgment reversed and cause remanded.