## ST. LOUIS, S. F. & T. RY. CO. v. KAYLOR.
### (No. 744—4683.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1927.)

**1. Trial ⬯362—Allowing jury to consider case further, after counsel indicated that answer to certain issue was against his interest, held error.**

In personal injury action, it was reversible error to allow jury to consider case further after plaintiff's counsel, in jury's hearing, inspected verdict containing conflicting answers, prior to reading thereof in open court, and indicated that answer to certain issue was against his interest.

**2. Trial ⬯362—Where answers to special issues are conflicting, jury should be retired for further consideration of issues after being informed of conflict.**

Trial court should, in preliminary way, read proposed answers being returned by jury to special issues, and if conflict is discovered he should state to jury that answers are conflicting and do not warrant entry of any judgment, and jury should be retired for further consideration of issues.

**3. Trial ⬯351(5)—Issue whether employee was negligent in manner and method of doing work does not cover issue of negligence in bodily position assumed.**

In employee's personal injury action against employer, issue whether plaintiff was guilty of contributory negligence in manner and method of doing work *held* not to cover issue whether he was guilty of contributory negligence in bodily position he assumed in doing work, and failure to give latter was error, though former was submitted.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Joe F. Kaylor against the St. Louis, San Francisco & Texas Railway Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (284 S. W. 983), and defendant brings error. Reversed and remanded to the district court.

E. T. Miller, of St. Louis, Mo., Goree, Odell & Allen, of Fort Worth, and Freeman, McReynolds & Hay, of Sherman, for plaintiff in error.

Randell & Randell, of Sherman, for defendant in error.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

POWELL, P. J. This case is fully stated by the Court of Civil Appeals. See 284 S. W. 983. The nature of the case is summarized by that court as follows:

"Joe F. Kaylor, appellee in the above numbered and styled cause, was awarded a judgment in the district court of Grayson county for $12,325 against appellant, St. Louis, San Francisco & Texas Railway Company, as damages for personal injuries received while in the service of appellant. The said judgment was awarded on the findings of a jury on special issues, and is in response to said findings. Appellant has duly perfected its appeal to this court."

The Court of Civil Appeals affirmed the judgment of the district court.

[1] The first assignment of error in the application is submitted as a proposition and reads as follows:

"The Court of Civil Appeals erred in holding that the trial court did not err in permitting plaintiff's counsel to inspect the verdict of the jury prior to the reading thereof to the jury in open court, and in permitting plaintiff's counsel, in the presence of the jury, to state that the jury were evidently mistaken in their answer to question No. 5; that the jury, in his opinion, did not intend to answer question No. 5 'Yes,' and in permtting plaintiff's counsel to make the statement to the court in the presence of the jury that there was a conflict in the findings, and requesting the court to call this matter to the attention of the jury, have them retire and consider their answers further, for the reason that said action on the part of plaintiff's counsel in so addressing the court in the presence of the jury was prejudicial to the plaintiff in error, was calculated to cause, and did cause, the jury to change their answer to question No. 5 from 'Yes' to 'No,' and, in effect, advised the jury of the legal effect of their finding to said question No. 5, and that plaintiff would not be entitled to have a judgment rendered in his favor in said cause by reason of such finding."

The bill of exceptions in connection with this assignment, after listing the names of the jury and mentioning the return of their verdict, reads as follows:

"Before the questions and answers were read to the jury, counsel for plaintiff inspected and read over the answers of the jury, and thereupon in open court stated to the court in the presence of the jury that the jury were evidently mistaken in their answer to question No. 5, and that the jury in his opinion did not intend to answer question No. 5 'Yes.'

"The court admonished counsel for plaintiff not to discuss the matter in the presence of the jury. Whereupon counsel for plaintiff approached the judge on the bench and stated, 'There is a conflict in the findings. The jury have found that the plaintiff was not guilty of negligence, that his injuries were brought about on account of the negligence of his helper, and this was the proximate cause of the injury. These answers are in conflict with the answer to question 5, and I think you should call the

jury's attention to this, and have them retire and consider their answers further.' The court replied, 'I have no authority to do this. My recollection is that Judge Mathis had the same question up, called the attention of the jury to the conflict in the answers, and had them retire and reconsider their answers, and the appellate court held this was error.' Whereupon counsel for plaintiff asked the court if he would render judgment for the plaintiff on the answers as represented, to which the court replied that he would be controlled by the decisions covering the situation.

"The defendant then and there excepted to the statement of counsel for plaintiff in the presence of the jury as to what would be the legal effect of said finding.

"Thereupon the court read the questions to the jury verbatim and the clerk of the court under instructions of the court, as each question was read, read the answer as made by the jury to each question propounded in the court's charge. After the questions had been read to the jury and the answers thereto read by the clerk, the court thereupon stated to the jury as follows:

"'So say you all, gentlemen?' to which the jury responded in the affirmative.

"Thereupon counsel for the plaintiff in the presence of the jury stated to the court that he desired to have the jury polled with reference to their answer to question No. 5 and to this question alone. The court thereupon declined to poll the jury with reference to question No. 5 alone, but informed plaintiff's counsel that, if he so desired, he would poll the jury as to the verdict rendered by them in response to the questions propounded to the jury.

"Thereupon the court, at the request of the counsel for plaintiff, polled the jury as follows:

"'Mr. Blassingame, is this your verdict?' to which said juror answered 'Yes'; each juror being polled and answering 'Yes' until the name of the juror Ed Waldron was reached, whereupon he was asked, 'Is this your verdict?' Said juror responded, in substance, as follows: 'There was one question I did not exactly understand.'

"The court thereupon stated to the jury:

"'Gentlemen of the jury, you will retire to the jury room and consider your verdict.' And proceeded no further with the poll of the jury.

"To which action of the court, in returning the jury to the jury room to further consider their verdict, the defendant in open court excepted.

"The jury thereupon returned to the jury room and after deliberating therein for a period of about ten minutes, returned into open court a verdict changing the answer they formerly rendered to question No. 5 from yes to no, the verdict as changed being in all respects as originally rendered except question No. 5 reading as follows:

"'Question No. 5. Was the plaintiff's injury the result of an accident, as that term has been hereinbefore defined?'

"The jury answered question No. 5 'No,' having changed their answer to said question from yes to no.

"The court thereupon received the verdict of the jury and the jury was discharged.

"To which action of the court in receiving

said verdict as changed and in discharging the jury, the defendant in open court excepted and here tenders its bill of exceptions No. 1, which is allowed by the court and ordered to record herein.

"Allowed and ordered filed as a part of the record in this case."

This assignment must be sustained. This precise situation, in its material and essential respects, was before Section A of the Commission of Appeals in the recent case of Railway Co. v. Casualty Co., 284 S. W. 940. The only difference in that case and the one at bar is that in the former, the court, in the presence of the jury, remarked that their answer to a certain issue would cause the plaintiff some worry. The jury then proceeded to remove the worry, as they did in the instant case. In the latter case, the court did not tell the jury that its answer to issue No. 5 would cause counsel for plaintiff some worry. It was not necessary for the court to do so, because the attorney spoke for himself and in no uncertain way. He, more than once, showed his intense anxiety over the answer to this very issue. The jury in each of these cases knew exactly the same thing and that was that it was to the interest of plaintiff that the answer to a certain issue be changed.

The Commission of Appeals recommended a remand of the case of Railway Co. v. Casualty Co., supra. The Supreme Court adopted the judgment recommended and approved the holding of the commission. The latter court spoke as follows:

"The remark was unwarranted, and should not have been made. The finding made by the jury on this issue was in conflict with the findings on the issue of negligence on the part of plaintiffs in error. While the court should have called the jury's attention to the fact that the findings were in conflict and permitted them to retire and further consider their verdict, having in view the elimination of the conflict, in doing so, the judge of the court should not have indicated that the verdict as returned might cause the attorney for one of the litigants worry. This remark was calculated to cause the jury to eliminate the worry, though it was the conflict and not the worry which should have been eliminated. Neither the judge of the court nor the jury should have been concerned with the worry. The verdict as finally returned into court was obtained by unfair means, and no verdict so obtained should be allowed to stand. Fairness is essential in the trial of all cases."

[2] We are in accord with the language just quoted. Trial courts should, in a preliminary way, read proposed answers being returned by juries to special issues. If a conflict is discovered by the court, he should state to the jury that the answers are conflicting and, in their present status, would not warrant an entry of any judgment in the case. With that information, the jury should be retired for further consideration of the issues and their answers thereto. But the court should not indicate to the jury, or permit counsel to do so, that it would be to the interest of one of the parties to have a certain issue answered in a certain way.

After counsel, in the instant case, had succeeded in getting before the jury his desires with reference to one certain issue, the court should not have permitted any further consideration of the case by the jury. In doing so, reversible error was committed.

In justice to the Court of Civil Appeals, it should be said that the decision of Section A of the Commission of Appeals, to which we have just referred, had not been written when the former court rendered its decision in the instant case.

[3] Another assignment refers to the failure of the trial court to give to the jury certain special issues affirmatively presenting the theory of contributory negligence pleaded by the company. In order that the special charges in question may be more fully understood, we quote as follows from the opinion of the Court of Civil Appeals:

"The above-stated facts are undisputed. On the disputed facts the following findings are made, by reason of the findings of the jury and the significance that should be given to such findings: Appellee was directed by appellant's shop foreman not to injure the binders on the engine, and, when this particular binder did not readily come down from the blows with the sledge hammer, he secured a block of oak wood about 4 by 4 in end dimensions and about 15 inches in length and placed same over the binder, and secured same in its place by holding one end of said block with both hands, directing the helper to strike same at a designated place, which would have permitted appellee to hold said block with safety. This method of accomplishing the work of knocking down the binder was adopted for security against any damage to the binder by coming in direct contact with the sledge hammer. In order to hold the block in its place, it was necessary for appellee to take the position assumed by him on the occasion in question, to wit, placing himself in a stooping position with his head directly over his hands and in close proximity thereto; there being a very narrow space because of other constructions in which appellee could do this work. About six blows had been struck by the helper on the place designated by appellee when he struck a blow away from this place, with the result that the said block flew up, and, with great force and violence, struck appellee on the chin and right side of the face, breaking his jaw bone, knocking out some teeth, and injuring his upper jaw to such an extent that necessitated the extraction of all his upper teeth."

The contributory negligence pleaded by the company was twofold. In the first place, it was contended by the company that this block of wood should not have been used at all, but other tools and appliances instead. In the second place, it was contended that Kaylor should not have stooped over so close to this

block of wood; that such a position of the body was not necessary.

The trial court itself submitted the following questions:

"Q. No. 7 Was the plaintiff guilty of negligence in the manner and method employed by him in attempting to knock down the binder on the occasion in question?'

"Q. No. 9. Was the plaintiff guilty of contributory negligence in the manner and method employed by him in attempting to knock the binder on the occasion in question?"

It will be observed that each question just quoted is identical except that one asks whether or not "the manner and method employed" in knocking down the binder was "negligence." The other asks whether such conduct was "contributory negligence."

The issues just quoted did present to the jury one of the company's theories of contributory negligence. But we do not think it covered the other theory of this defense, as pleaded. The company presented three special issues upon this other theory, as follows:

"Was plaintiff guilty of contributory negligence in the manner and method in which he held the block of wood on the occasion in question? (Defendant's requested issue No. 10.)

"Did the defendant place his head in close proximity to said block of wood when he directed his helper to strike same with a sledge hammer on the occasion in question?" (No. 12.).

"In the event you answer the above question 'Yes,' then was plaintiff guilty of contributory negligence in so placing his head at said time?" (Defendant's requested issue No. 13.)

These issues were refused. The Court of Civil Appeals concedes that requested issue No. 10 should have been given, or requested issues 12 and 13 should have been submitted to the jury, unless it can be said that the trial court's own issues, to which we have just referred, covered both theories of contributory negligence. The latter court decided that the trial court's own issues did that very thing. We do not concur in this view. The manner and method of doing the work was one thing. The bodily position assumed by Kaylor in adopting a certain manner and method of work was another thing. If either was contributory negligence, a defense was established which would mitigate the damages. We think two very recent cases by Section A of the Commission of Appeals are exactly in point in requiring a reversal of this case because of the refusal of the trial court to submit either special issue No. 10 or special issues No. 12 and 13 requested by the company. We refer to the cases of Railway Co. v. Allen, 278 S. W. 186, and Railway Co. v. Wilson, 279 S. W. 808. These decisions are in line with the older case of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W 517.

The seventh assignment in the application

refers to an alleged refusal of the trial court to permit counsel for the railway company to have the plaintiff in the trial court, before the jury, answer whether or not he was willing to submit to a physical examination at that time by competent and disinterested physicians, Having already recommended a reversal of this case upon two grounds, it is not necessary for us to go into this question. We do not believe this exact situation will arise upon another trial. If it does, our Supreme Court has already laid down the proper rule in the case of Railway Co. v. Cluck, 97 Tex. 172, 77 S. W. 403. The trial court will doubtless be guided by that decision in case the question again presents itself.

The application contains other assignments. We shall not discuss them. In so far as they are likely to arise upon another trial of the case we think the Court of Civil Appeals has correctly decided them.

For the two errors we have discussed, or either of them, we recommend that the judgments of the district court and Court of Civil Appeals be reversed and the cause remanded to the former for another trial.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.