## DALLAS RY. & TERMINAL CO. v. HORTON.

### No. 12448.

Court of Civil Appeals of Texas. Dallas.

July 9, 1938.

Rehearing Denied July 30, 1938.

Burford, Ryburn, Hincks & Charlton, Frank M. Ryburn, Jr., and W. M. Taylor, Jr., all of Dallas, for appellant.

Houston & Johnson, of Dallas, for appellee.

LOONEY, Justice.

M. C. Horton sued Dallas Railway & Terminal Company to recover damages for personal injuries to his wife, Mrs. Adeline Horton, alleged to have been received under substantially the following circumstances while she was alighting from one of appellant's street cars in the City of Dallas—that is, on leaving the car, the coat she was wearing was caught on the steps of the car as the motorman closed the door, and the car being put in motion, Mrs. Horton was thrown to the pavement and dragged a short distance. The jury found all issues of negligence and contributory negligence in favor of the plaintiff, and awarded him damages in the sum of $3,000, for which judgment was rendered, resulting in this appeal.

The charge of the court is not complained of, except in one respect hereinafter mentioned, nor is complaint made of the verdict; the questions raised are, (1) that the court erred in submitting issue number 22 on the measure of damages, the contention being that the charge permitted double recovery; (2) that, during their deliberation, jurors were guilty of misconduct in discussing matters not in evidence; and (3) that the court erred in refusing to receive the verdict of the jury as first returned (containing conflicting answers), and in repeatedly sending them back for further deliberation. These questions will be discussed in the order mentioned.

On the measure of damages the court submitted issue number 22 as follows: "What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence will reasonably compensate the plaintiff, M. C. Horton, for the diminished capacity, if any, of his wife Mrs. Adeline Horton, to work and earn money in the past, if there has been any in the past, and in the future, if you find there will be any in the future, and for the physical pain and mental anguish in the past, if there has been any in the past, and in the future, if you find there will be any in the future, of Mrs. Adeline Horton, and for the diminished capacity of the said Mrs. Adeline Horton to perform her household duties in the past, if there has been any in the past, and in the future, if you find there will be any in the future, proximately resulting from the injuries, if any, of Mrs. Adeline Horton, sustained by her on the occasion inquired about herein?".

Appellant contends that this charge is erroneous, in that, it includes Mrs. Horton's diminished capacity to work and earn money, as well as her diminished capacity to perform household duties, hence was calculated to mislead the jury into assessing double damages for the same element.

Where a special verdict is sought, the statute requires the case to be submitted "upon special issues raised by the pleadings and the evidence" (Art. 2189, R.S.). Plaintiff alleged, in substance that, in addition to resultant pain and suffering, the injuries received by his wife incapacitated her to perform household duties, and destroyed or greatly diminished her capacity to work and earn money, alleging that, prior to the injuries, she was strong and healthy, about 22 years of age, able to perform her domestic duties, also was a skilled worker able to earn the sum of about $30 per week, in addition to performing household duties; that as a proximate result of the injuries, her capacity to work and earn money and perform household duties, was destroyed or materially impaired.

Aside from the medical testimony, Mrs. Horton testified in substance that, she was employed at the time of the injury, earning $12 per week; had been working in that position two or three months; that prior thereto she worked on a salary and commission basis, earning generally from $20 to $30 per week, and had worked for a manufacturing company by piece-work and earned about the same; that she had been working and earning in this manner since 14 years of age (being 22 years of age at the time she was injured); that since being injured she has not attempted to do anything other than household work, and that she is not able to do that without pain and suffering, and that, prior to being injured, she had never been troubled in that manner.

In view of the pleadings and evidence, we think it entirely proper for the court

to advise the jury that, in addition to the pain and suffering endured by Mrs. Horton, they might consider her diminished capacity to labor and.earn money, as she had theretofore done; also her diminished capacity to perform household duties, as theretofore—that is, to earn wages or salary by working, and work at domestic duties without salary or wages. Plaintiff´ alleged that he was damaged in each of these respects, and there was proof sustaining the allegations. We fail to discover either in the form of the issue or the language employed, anything calculated to confuse a jury of average intelligence or lead them into the error of giving double damages.

In Texas & P. Ry. Co. v. Perkins, 284 S.W. 683, 686, Judge Gallagher, speaking for the Waco Court of Civil Appeals, said: "The authorities distinguish between the loss of earning capacity and the loss of working capacity" (citing authorities). The distinction drawn is between the capacity to work without salary or wages, such as performing the ordinary domestic duties of housewife, and the capacity to earn wages or salary under employment; these distinct elements being alleged and supported by evidence, we do not think the court erred in mentioning both as proper items for the consideration of the jury in arriving at an amount that would reasonably compensate plaintiff. We therefore overrule appellant's assignments and propositions pertaining to this phase of the case.

 Appellant insists that the court should have granted a new trial, because of the misconduct of the jury in considering extraneous matters not in evidence; the contention being that, one of the jurors stated, in the presence of others, that his wife fell and sustained injuries similar to those alleged to have been sustained by Mrs. Horton; also statements by one or more jurors concerning the operation of the door and steps of the street car.

The testimony heard on the motion for a new trial, in regard to the misconduct of the jury, stated on pages 20-6 and 35-6 of appellant's brief, supplemented by statements by appellee on pages 6-10 of his brief, reveals a conflict as to when the alleged damaging statements were made— that is, whether before or after the jury answering all questions had reached a verdict. Appellant seems to concede that,

if there existed an issue of fact on this point, the decision of the trial court was final; also seems to concede that the testimony on this point was conflicting. At page 30 of its brief, the statement is made that: "The only question left for determination is whether such discussion took place before or after the jury had determined that Mrs. Horton was injured, and before they had answered the issue on damages. If it took place after all the issues had been answered and during the time the jury was attempting to discover' the conflict, we would not attempt to argue that any material misconduct took place which would necessitate a reversal of this case * * *. By reading the transcript of testimony on the hearing of the motion for a new trial, it is difficult to tell exactly when the discussion took place, and in fact, the testimony of some of the jurors is directly conflicting". The juror Mansfield who made the statement in question, testified that he did not mention the matter until after the jury agreed upon its verdict, presented the same in court, and had been sent back to rid their verdict of conflicting answers.

The discussion in regard to the operation of the car doors and steps similarly was not mentioned until after the jury agreed upon a verdict and returned for further deliberations because of conflicting answers. Only three jurors testified in regard to this matter—Glidewell, Herndon and Shipley. Glidewell and Herndon did not remember at what stage of the proceedings the matter was mentioned; however, Shipley testified that some jurors having ridden on street cars said they knew how the doors were operated, but that these statements were not made until after the jury agreed, presented their verdict in court, and had been sent back to iron out conflicts in their answers. Shipley also testified that he warned the jurors against mentioning such matters, thereupon the subject was dropped.

The method of operating the doors and steps of the street car, was fully explained (and nowhere disputed) by Earnest Lawson, operator of the street car involved: in this inquiry. In effect, he stated that the doors were opened and closed and the steps lowered and raised automatically, by the use of an air lever. Seemingly, this operation is open to the observation of everyone who rides upon street cars, and is a matter of common knowledge. That

jurors may take knowledge of the nature of mechanical devices in common use, such as automobiles etc., is well recognized (see 23 C.J. page 1115 note 63). Thus, we think it obvious that, the trial court was confronted with the task of deciding as to the materiality of the alleged extraneous matters discussed, and of reconciling the conflicting evidence as to whether or not same were mentioned during the deliberations of the jury at a time and under circumstances calculated to prejudice appellant. This being the question presented to the trial court, we think its decision was final and conclusive.

■ In 1905, the Legislature added to the chapter on "new trials" an amendment (now \ Art. 2234, R.S.) reading: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material".

Prior to this amendment, jurors in civil cases were not permitted to impeach their verdicts. That this was the prevailing public policy on that subject is shown by repeated decisions of our Supreme Court, among others, the following: Campbell v. Skidmore, 1 Tex. 475; Mason v. Russel's Heirs, 1 Tex. 721; Boetge v. Landa, 22 Tex. 105; Ellis v. Ponton, 32 Tex. 434, 435; Galveston, H. & S. A. Ry. Co. v. Roberts, Tex.Civ.App., 91 S.W. 375. The evil sought to be remedied was that, at times jurors were guilty of misconduct in receiving communications and evidence, under circumstances not susceptible of proof other than by the jurors themselves; so, to meet such a situation, the amendment was adopted as a means of protecting litigants from irreparable injury. The language of caution employed by the Legislature, Acts 1905, c. 18, in the amendment, to wit, " * * * and if the misconduct proven, or the testimony received, or the communication made be material a new trial may in the discretion of the court be granted", indicates that it is only when the matters involved are material that the statutes should be invoked, and, further, that the question of granting or refusing new trial, in such instances, is committed to the sound discretion of the trial judge. This change in the statute, subverting as it did old rules and prec-

edents, was received by the courts with apprehension as to its results. This is evident from expressions found in the earliest decisions thereunder. In Foley v. Northrup, 47 Tex.Civ.App. 277, 282, 105 S.W. 229, 231, Judge Fly used this language: "The mode of procedure allowed by the trial court is a novel one and one we fear that will be productive of no good results, but it is sanctioned by a law passed by the Twenty-Ninth Legislature. Gen.Laws Tex. 1905, p. 21, c. 18. * * * There is a clause in that law which sets aside ancient rules, and subverts precedents, but which gives the discretion to the trial judge to grant or refuse the new trial." Again, in Kalteyer v. Mitchell, Tex.Civ.App., 110 S. W. 462, this language was used (page 467): " * * * The statute (Gen.Laws 1905, p. 21, c. 18), which permits the dangerous practice of impeaching and destroying a verdict of a jury by testimony of members of the jury has a saving clause, which places the granting of a new trial on the ground of misconduct of the jury in the discretion of the trial court, and this court will never interfere with the exercise of such discretion unless there appears a gross abuse of the same". Although receiving the amendment with apprehension as to results, the courts found a saving clause—that is, the provision that committed to the discretion of the trial judge the granting or refusing of a new trial. For full discussion of the subject, see dissenting opinion in Abrams v. Bradshaw, Tex.Civ.App., 2 S.W.2d 917, 920, 925. This case reached the Supreme Court on writ of error (see Bradshaw v. Abrams, 24 S.W.2d 372, 373) and on the point under discussion—that is, as to the finality of the decision of the trial court on conflicting evidence as to the misconduct of the jury, the Commission, Section A, in an opinion by Judge Critz, said (page 374): "We further hold that, where evidence is heard by the trial court on motion for new trial concerning alleged misconduct, and such evidence is conflicting touching the question as to whether said alleged misconduct actually occurred, the part of the evidence which supports the judgment of the trial court will, on appeal, be presumed to have been found by said court in favor of his judgment. In other words, where there is tangible and legal evidence in the record which supports the judgment of the trial court, such judgment should not be disturbed, even though there is other evidence in the record to the contrary. The trial court

does not abuse his discretion when his acts are well supported by the record. The Supreme Court has never held that it is a forum in which to settle disputed issues of fact; but it has held, and now holds, that, where the misconduct has been established as a matter of law, the question as to whether or not it is reasonably doubtful whether such misconduct affected the verdict in a material way is also a question of law." We therefore overrule all assignments and propositions involving the alleged misconduct of the jury.

Appellant also insists that, the court committed prejudicial error in repeatedly sending the jury back for further deliberations, advising them that owing to a conflict in their answers, it was impossible for the court to render judgment thereon; the contention being that, such conduct in effect was a comment upon the evidence, and resulted in coercing the jury into rendering a verdict contrary to the one previously reached; and further, that the court erred in instructing the jury orally, in violation of the statute requiring instructions to be in writing.

These questions are based upon proceedings revealed in appellant's bill of exception, as follows: On receipt of the verdict, containing conflicting answers, the judge called attention to that fact, stating that owing to the conflict, it was impossible to base a judgment thereon; therefore, directed the jury to read the charge and discover the conflict. (The jury had found appellant guilty of actionable negligence, also found that Mrs. Horton's injuries were the result of an unavoidable accident). After deliberating further, the jury again came into court with a verdict containing conflicting answers, whereupon the presiding judge directed them to resume their deliberations, and to read the definition under Special Issue No. 21, this being the issue on unavoidable accident. (As the verdict then stood, the jury had convicted appellant of actionable negligence, also found that Mrs. Horton was guilty of negligence, a proximate cause of her injuries, and, in addition found that same were the result of an unavoidable accident). After deliberating, the jury again presented an inconsistent verdict. (The only change made was to change the singular form of the verb "is" to the plural "are" in answering the issue on unavoidable accident); thereupon (for the fourth time) the court directed the jury to return for further deliberations,

and thereafter returned a verdict which was received and the court then explained to the jury why their previous answers were held conflicting and, reading their answers to the several issues, each juror signified that the same was his verdict. During this entire episode the jury did not ask for further instructions touching any matter and none of the instructions or comments by the court were in writing. The court modified the bill of exception by stating that the action of the court, as set out in the bill of exception, was not objected to at the time, although one of appellant's attorneys was present in court and witnessed the entire proceedings.

It will be noted that the court did not tell the jury wherein their answers conflicted, simply called their attention to its existence, and directed them to return for further deliberations. As the jury made no request for instructions, Art. 2198 was not applicable. The oral directions given the jury, in our opinion, were not instructions required to be in writing, within the meaning of the statute. We do not think the bill of exception reveals coercion on the part of the court, or a comment upon the evidence; nor do we find that, in repeatedly sending the jury back for further deliberations, the court abused its discretion. Admittedly, it was the duty of the court to reject the inconsistent verdict as first presented; and, for the same reason, we think it was within its discretion to send the jury back as often as necessary, to the end of obtaining a coherent verdict; one that would support a judgment and thus avoid the necessity of declaring a mistrial.

In Wichita Valley Ry. Co. v. Southern Casualty Co., Tex.Com.App., 284 S.W. 940, 941, speaking of the duty of a trial court where the jury presents conflicting findings, Judge Bishop said: "While the court should have called the jury's attention to the fact that the findings were in conflict and permitted them to return and further consider their verdict, having in view the elimination of the conflict," etc. In St. Louis, S. F. & T. Ry. Co. v. Kaylor, Tex.Com.App., 291 S.W. 216, 218, in similar situation, Judge Powell said: "Trial courts should, in a preliminary way, read proposed answers being returned by juries to special issues. If a conflict is discovered by the court, he should state to the jury that the answers are conflicting and, in their present status, would not warrant an entry of any judgment in the case. With

that information, the jury should be retired for further consideration of the issues and their answers thereto. * * *" These opinions were approved by the Supreme Court. In Dick Co. v. Yanez, Tex.Civ. App., 55 S.W.2d 600, writ refused, Judge Pelphrey used the following pertinent language (page 602): "It is not disputed that there existed a conflict between certain answers of the jury in its first verdict. Under such a state of facts, we think it clearly was the duty of the court to refuse to accept the verdict and send the jury back for further deliberations. Turner v. Missouri, K. & T. Ry. Co. (Tex.Civ.App.) 177 S.W. 204 (writ refused); Wichita Valley Ry. Co. v. Southern Casualty Co. (Tex. Com.App.) 284 S.W. 940; St. Louis, S. F. & T. Ry. Co. v. Kaylor (Tex.Com.App.) 291 S.W. 216—the holdings of the Commission in the last two cases being approved by the Supreme Court. In the first case it was also held that the court's calling the attention of the jury to the conflicts was not error. Therefore we think it proper for the court to refuse to accept a conflicting verdict and to inform the jury as to where the conflict exists. Certainly the court should not in so doing suggest to the jury how the changes should be made so as to remove the conflict. Such was not done in this case, and no such objection was made to the instruction given."

In harmony with the views herein expressed, we think the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.