**SOUTHERN UNDERWRITERS et al. v. MOWERY.**

No. 5683.

Court of Civil Appeals of Texas. Texarkana

Jan. 14, 1941.

Rehearing Denied Feb. 6, 1941.

Will R. Saunders and Claude Williams, both of Dallas, and Stinchcomb, Kenley & Sharp, of Longview, for plaintiffs in error.

White & Yarborough, of Dallas, and J. P. Moseley, of Ennis, for defendant in error.

JOHNSON, Chief Justice.

This suit was filed by M. V. Mowery against the Southern Underwriters and the United Employers Casualty Company to set aside an award of the Industrial Accident Board of Texas, and to recover compensation for alleged disability resulting from personal injury accidentally sustained while working in the course of his employment with Stroud Cable Tool Drilling Company, which company was insured under the Workmen's Compensation Act by defendants. With respect to his injury plaintiff alleged that while working as an oil well driller for his said employer an explosion occurred October 24, 1937, throwing oil and flames upon his body, face, hands, arms, shoulders, back, stomach, hips and thighs, severely burning him, "practically all over his body," rendering him unconscious for about two weeks. He further alleged: "That plaintiff's face, eyes, mouth, cheeks, nose, chin, forehead, and all the soft tissues, ligaments, nerves, muscles and muscular attachments thereof were severely burned * * * that plaintiff's arms, hands, fingers, thumbs, wrists, elbows and all the tendons, leaders, ligaments, nerves, muscles and muscular attachments, soft tissue and bony parts thereof and those radiating thereto and therefrom, were severely burned, and as a natural result thereof the leaders and ligaments have become drawn * * * that plaintiff sustained second and third degree burns on his hands, each and both of them, wrists, and forearms, and that his fingers have been rendered stiff, and that he can not close either of his hands, either by active or passive manipulations. * * *"

The petition continues at length to describe the burns and results thereof from which plaintiff claims to have sustained total, permanent disability; and alternatively pleads total temporary, partial permanent, and partial temporary disability. Defendants' answers contain a general denial. The case was submitted to a jury upon special issues, in response to which the jury found:

(2) That plaintiff accidentally sustained personal injuries on or about October 24, 1937.

(3) That he sustained such injuries while working as employee of Stroud Cable Tool Drilling Company.

(4) That such injuries were sustained by him in the course of his employment with said Company.

(5) That plaintiff sustained total incapacity on said date.

(6) That such total incapacity is permanent.

(7) That the incapacity sustained by plaintiff naturally resulted from the injuries sustained by him on October 24, 1937.

(9) That said total incapacity so sustained by plaintiff will continue throughout his life.

(10) That the incapacity sustained by plaintiff was not partial.

(24) That plaintiff sustained total incapacity on said date to his right hand.

(25) That such total incapacity to his right hand is permanent.

(26) That such total incapacity to his right hand will continue throughout plaintiff's life.

(27) That the incapacity sustained to his right hand was not partial.

(32) That plaintiff sustained total incapacity to his left hand on said date.

(33) That such total incapacity to his left hand is permanent.

(34) That such total incapacity to his left hand will continue throughout plaintiff's life.

(35) That the incapacity sustained to plaintiff's left hand is not partial.

(37) That partial incapacity, if any, sustained to plaintiff's left hand, is not permanent.

(40) That the total incapacity sustained by plaintiff is not temporary.

(41) That the partial incapacity, if any, sustained by plaintiff is not temporary.

(42) That plaintiff's incapacity is confined solely to both hands.

(43) That his incapacity is not solely the result of hypertrophic arthritis.

(44) That his incapacity is not solely the result of prior kidney trouble.

(45) That his present incapacity is not the result of a prior injury.

(46) That the percentage, if any, of his present incapacity that is not attributable to or connected with or caused by previous injuries sustained by plaintiff prior to October 24, 1937, is "No percentage".

(47) That his incapacity is not solely the result of the ravages of old age or senility.

The jury made other findings which are not material to any proposition raised on this appeal and for that reason are not quoted. Judgment was entered awarding plaintiff compensation at the rate of $20 per week for 401 weeks, reduced to a lump sum and credited with payments previously made by defendants of $20 per week for twenty-five weeks. Defendants have perfected writ of error to this court. Plaintiffs in error will be referred to as appellants and the defendant in error will be referred to as appellee.

Appellants' 1st, 2nd, and 3rd propositions assert that there is irreconcilable conflict in the jury's answers to special issues No. 45 and 46. Special issue No. 45 and the jury's answer thereto read as follows: "Do you find from a preponderance of the evidence that the plaintiff's present incapacity, if any, whether partial or total, is not the result of a prior injury received by plaintiff before October 24, 1937?" Answer: "His present incapacity is not the result of a prior injury."

Special issue No. 46 and the jury's answer thereto reads as follows: "What, do you find, from a preponderance of the evidence, to be the per cent of plaintiff's present incapacity, if any, whether total or partial, is not attributable to or connected with or caused by previous injuries sustained by plaintiff prior to October 24, 1937? Answer in percentage, if any." Answer: "No percentage."

It is the contention of appellants, since question No. 46 is phrased in the negative,

that the answer, "No percentage", means "No percentage of plaintiff's present incapacity is not attributable to or connected with or caused by previous injury," and that the same amounts to an affirmative finding "that 100% or all plaintiff's present incapacity is the result of a prior injury," and that such answer is in irreconcilable conflict with the jury's answer to special issue No. 45. It is the duty of the court to reconcile apparent conflict in jury answers to material issues if it can be reasonably done in the light of the pleadings and evidence. 41 T.J. 1224, § 360 et seq. If given the meaning placed on it by appellants' construction, the answer to special issue No. 46 would be without any support in the evidence. But reconciliation of apparent conflict is not to be determined by the fact that the answer to one of the issues is without support in evidence, when, as here, the remedy of motion to render judgment non obstante veredicto, as provided by Article 2211, Vernon's Ann.Civ.Statutes, was not pursued in the trial court. Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970. It will be observed that special issue No. 46 is duplicitous by inquiring as to what percentage, if any, of appellee's present incapacity is not (1) attributable to, (2) or connected with, (3) or caused by, previous injuries. Since in answer to a plain and unambiguous question (special issue No. 45) the jury expressly found that appellee's present incapacity is not the result of a prior injury, the answer to No. 46 may reasonably be referred to the second inquiry contained therein, that is, as to whether there was any connection between his present incapacity and a prior injury. Howard v. Howard, Tex.Civ.App., 102 S.W.2d 473. To be material the previous injury must have contributed to the present incapacity. R.C.S. Article 8306, Sec. 12c. A finding that is immaterial may be disregarded as surplusage. Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090. There is another reason why the answer to special issue No. 46 should not be held in irreconcilable conflict with answer to special issue No. 45. The answer to No. 46 does not expressly affirm as a fact that appellee's present incapacity is in any degree the result of or connected with a prior injury. In view of the form of the question, the answer may reasonably be construed as meaning to say that if any of appellee's present incapacity is attributable to or connected with a prior injury, then in such event all his present incapacity is attributable to or connected with a prior injury. At most there is but an implication of a finding that appellee's present incapacity is the result of a prior injury. "Such implication should not be held sufficient to contradict and nullify the express finding" made in answer to special issue No. 45. Traders & General Insurance Co. v. Ross, 131 Tex. 562, 117 S.W.2d 423, 425; Millers' Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963, writ refused.

■ Appellants' 4th and 5th propositions make the contention that the jury's answers to special issue No. 42 is in irreconcilable conflict with the jury's answers to special issue No. 5 and No. 6. In answer to special issue No. 5 and No. 6 the jury found that appellee sustained total and permanent incapacity. In answer to special issue No. 42 the jury found that appellee's incapacity is confined solely to both hands. In determining whether alleged conflict in answers to particular issues is irreconcilable, they may be viewed in the light of other findings. The verdict as a whole should be construed. 41 T.J. 1224, § 360. When this is done the apparent conflict here alleged becomes reconciled; for in answer to special issues Nos. 24, 25, 32, and 33, the jury found that appellee sustained total permanent incapacity to both hands. The term "total incapacity to his hands" as used in the court's charge was defined to mean the total loss of the use of his hands at or above the wrist. The findings that the appellee sustained total and permanent loss of the use of both hands at or above the wrist raises the conclusive presumption that his incapacity is total and permanent. Article 8306, Sec. 11a, Vernon's Ann.Civ.Statutes (Acts 1927, 40th Leg. p. 41, Chap. 28, Sec. 1), reads:

"Sec. 11a. In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to-wit:

"(1) The total and permanent loss of the sight of both eyes.

"(2) The loss of both feet at or above the ankle.

"(3) The loss of both hands at or above the wrist.

"(4) A similar loss of one hand and one foot.

"(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.

"(6) An injury to the skull resulting in incurable insanity or imbecility.

"In any of the above enumerated cases it shall be considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member.

"The above enumeration is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity."

So it is seen that the findings in answer to Nos. 5 and 6, that appellee's incapacity is in fact total and permanent, do not conflict with the findings in answer to Nos. 42, 24, 25, 32, and 33, that his incapacity is confined to both hands, and that such incapacity is the total and permanent loss of the use of both hands at or above the wrists, but accord with the conclusive presumption raised by such latter findings.

Appellants' 6th and 7th propositions complain of the phrase "at or above the wrist" contained in the trial court's definition of the term "total incapacity of the hand" and "partial incapacity of the hands" as used in the court's charge, reading:

"You are instructed that the phrase 'total incapacity of the hand,' as used in the court's charge means total loss of the use of the hand at or above the wrist; it does not imply an absolute disability to perform any kind of labor, but such incapacity of the hand that it disqualifies a person from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment requiring the use of said hand is ordinarily regarded as total incapacity of the hand.

"You are instructed that by the term 'partial incapacity of his hand', as used in the court's charge is meant the extent, if any, that the injury, if any, to his hand at or above the wrist, in fact destroys or impairs the ability of the hand to be as efficient and competent for performing the usual tasks of a workman after the injury, if any, as it was before; any degree of incapacity in the hand less than total."

Appellants in the trial court objected to the definition of the term "total incapacity of the hand" for the reason "that said definition is an incorrect legal definition of said term when applied to the specific loss of the use of the hand which, in law, means the loss of the use of the arm below the elbow, and not at or above the wrist, as set out in the court's charge * * *." and to the definition of the term "partial incapacity of the hand" for the reason "that said definition is too broad and too general and is not confined to the statutory element concerning the specific loss of the use of the hand which means in law the partial loss of the use of the arm below the elbow and therefore said definition does not confine the jury's determination to the specific elements set out in the law." The contention now made is that the testimony of appellants' doctor witnesses show that appellee's disability is confined to his fingers and that the phrase "at or above the wrist" in said definition is too restrictive and prevents the jury from considering said testimony. We do not interpret the testimony of said witnesses as intending to say that appellee's incapacity is confined to his fingers, but should such testimony be so construed, appellants failed to request and thereby waived any issue as to appellee's disability being confined to his fingers. The definition complained of properly (and favorably to appellants) prevented the jury from using incapacity confined to the fingers as a basis for their answer that he had sustained incapacity to his hands, but it did not prevent the jury from considering and weighing the testimony of appellants' doctor witnesses tending to show, if it did, that appellee's incapacity is confined to the fingers, insofar or in the sense that such testimony disputed and tended to disprove the testimony of appellee and his doctor witnesses to the effect that he had lost the use of his hands at and above the wrists. The phrase complained of is framed, and correctly so, in the language of the statute under which appellee sought to recover. Article 8306, Sec. 11a. The propositions are overruled.

Appellants' 8th proposition complains of the trial court's action in overruling their objections, that special issue No. 2 is too broad and allowed the jury to take into consideration injuries pleaded but not proved, and injuries proved but not pleaded. The issue reads: "Do you find from a preponderance of the evidence, that plaintiff, M. V. Mowery, accidentally sustained personal injuries on or about the 24th day of October, 1937?" The answer was in the affirmative. Special issues framed similarly to that here under consideration are discussed in the following cases: Southern Underwriters v.

Thomas, Tex.Civ.App., 131 S.W.2d 409, and Southern Underwriters v. Wright, Tex.Civ.App., 142 S.W.2d 297, and cases therein cited. It is a settled rule of law that recovery must not be allowed upon a cause of action alleged but not proved, nor upon one proved but not alleged. But the question of whether a special issue is too broad and for that reason might result in violation of such rule by a judgment being rendered upon the verdict returned in response thereto, generally is to be determined from the pleadings, evidence, and the charge of the court as a whole, in the particular case in which the issue is submitted. We do not think that the issue under consideration is to be condemned as constituting reversible error in all cases without regard to the circumstances of the particular case in which it is submitted. We agree that in a case where the court has permitted proof of an injury different from that alleged in the petition, the issue would be too broad for in such case it might permit an affirmative answer (and judgment) based upon testimony before the jury of an injury not pleaded. Traders' & General Ins. Co. v. Low, Tex.Civ.App., 74 S.W.2d 122, writ refused; Southern Underwriters v. West, Tex.Civ.App., 126 S.W.2d 510, writ refused. But we do not have that circumstance in this case. In the present case appellants have not pointed out, and our examination of the record has not revealed, any injury shown in the testimony different from that pleaded, nor any pleaded and not proved. In the statement under this proposition appellants assert "that there is no pleading on behalf of the plaintiff that he had sustained any incapacity to his eyesight or eyes." The assertion is true, but the fact that appellee did not plead that he had sustained any incapacity to his eyes or eyesight is immaterial in this case: (1) Because the inquiry made by the issue is confined to "injury" as distinguishable from "incapacity"; (2) because there is no testimony showing that the burns resulted in either injury or incapacity to his eyes or eyesight; and no recovery is sought for incapacity to his eyesight or eyes. It will be further noted that special issue No. 2 when read in connection with the court's definition of "preponderance of the evidence," defined by the court to the jury as meaning "the greater weight and degree of credible testimony before you", prevents the jury from considering any injury alleged but not shown in the testimony before the jury. There is another reason why special issue No. 2 does not authorize reversal of this case, because the judgment rendered is supported by the findings of the jury in answer to special issues sustaining total permanent incapacity as a result of the injury found to have been confined to both hands at or above the wrist. Article 8306, Sec. 11a.

Appellants' 9th proposition complains of action of the trial court in orally, instead of in writing, stating to the jury that their answers to special issues Nos. 27 and 35 were in conflict and to retire and reconcile the conflict. In answer to special issue No. 35 the jury found that appellee's incapacity to his left hand is not partial. In answer to issue No. 37 the jury found that partial incapacity, if any, to appellee's left hand is not permanent. It appears from appellants' bill of exception and the court's qualification thereof that all the proceedings complained of were in open court and in the presence and hearing of the attorneys for appellants and the attorneys for appellee; that the jury had previously returned into court and announced that they had reached a verdict, and upon examination of same by the court before being accepted, it appeared that the jury had in answer to special issue No. 35 found that appellee had not sustained partial incapacity to his left hand and having so found, the jury did not answer No. 37, inquiring whether partial incapacity to his left hand, if any, was permanent. Whereupon the court orally stated to the jury to retire and answer special issue No. 37. After retiring the jury again came into open court and announced that they had reached a verdict which was examined by the court and in which they had answered No. 37 "Yes". Whereupon the court orally stated to the jury that the answer to No. 37 conflicted with their answer to No. 35 and to retire and reconcile the conflict. After the jury had been so retired and had closed the door to their room, one of the attorneys for appellants made objection to the court because his statement informing the jury that their said answers were in conflict and directing them to retire and reconcile the conflict was not made in writing. Whereupon the jury again returned into court and announced that they had reached a verdict, which was examined and accepted by the court and in which verdict the jury had changed their answer to No. 37 from

"Yes" to "No." The contention is made to the effect that an oral statement by the court to the jury calling their attention to the fact that their answers to certain issues are in conflict and directing them to retire and reconcile the conflict is a charge of the court required to be in writing, citing R.C.S. Article 2198, and Scroggs v. Morgan, 133 Tex. 581, 130 S. W.2d 283. The statute and decision last above cited are not applicable to the facts in the present case. The rule governing here is declared in Dallas Ry. & Term. Co. v. Starling, 130 Tex. 379, 110 S.W.2d 557, 558, as follows:

"By a long line of decisions it has been established that a trial judge not only has the power and authority to decline to receive a verdict of a jury containing conflicting findings, but that it is his duty upon discovering such conflict or conflicts to point them out and retire the jury for further consideration of their answers. The appropriate procedure was outlined in the case of St. Louis, S. F. & T. Ry. Co. v. Kaylor, Tex.Com.App., 291 S.W. 216, 218, in this language: 'Trial courts should, in a preliminary way, read proposed answers being returned by juries to special issues. If a conflict is discovered by the court, he should state to the jury that the answers are conflicting and, in their present status, would not warrant an entry of any judgment in the case. With that information, the jury should be retired for further consideration of the issues and their answers thereto. But the court should not indicate to the jury, or permit counsel to do so, that it would be to the interest of one of the parties to have a certain issue answered in a certain way.'

"The opinion quotes with approval language of similar import from a prior decision of this section of the Commission of Appeals in the case of Wichita Valley Ry. Co. v. Southern Casualty Co., 284 S.W. 940. Among other decisions of like effect may be noted the following: Denison Cotton Mill Co. v. McAmis, Tex.Civ. App., 176 S.W. 621, reversed on other grounds, Tex.Com.App., 215 S.W. 442, 447; Turner v. Missouri, K. & T. Ry. Co. of Texas, Tex.Civ.App., 177 S.W. 204, error refused; Mayo v. Fort Worth & D. C. Ry. Co., Tex.Civ.App., 234 S.W. 937, error dismissed; St. Louis Southwestern Ry. Co. v. Larkin, Tex.Civ.App., 34 S.W.2d 693, error dismissed; Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S.W.2d

246, error dismissed; Traders' & General Ins. Co. v. Nunley, Tex.Civ.App., 80 S.W. 2d 383, error refused."

The rule above quoted does not expressly state that such instructions should be made in writing, but we think it is to be so implied from the subject matter of the rule. However, we do not think that failure to do so necessarily constitutes reversible error in all cases. Dallas Ry. & Term. Co. v. Horton, Tex.Civ.App., 119 S.W.2d 122, writ dismissed. Failure to do so in the present case did not constitute reversible error, because it affirmatively appears from the record that appellants were not harmed thereby, as will be shown below. When the jury rendered their verdict in the first instance, in which they had found in answer to No. 35 that appellee had not sustained partial incapacity to his left hand, and in which No. 37 inquiring as to the duration of partial incapacity, if any, sustained to his left hand, was not answered, this verdict should have been accepted. The jury having found that appellee had not sustained partial incapacity to his left hand, the inquiry as to duration of partial incapacity, if any, sustained to his left hand, passed out of the case. The jury should not have been directed to retire and answer No. 37, and thus attempt to measure the duration of partial incapacity which they had found did not exist; in their efforts to do so neither of the findings, that such partial incapacity, if any, sustained was "permanent" or was "temporary", would be held in irreconcilable conflict with or change the result of the express finding in answer to special issue No. 35. Traders & General Ins. Co. v. Ross, supra; Millers' Indemnity Underwriters v. Schrieber, supra.

Appellants have grouped their propositions 10 to 16, inclusive, under one discussion, and we shall dispose of them in like manner. The propositions complain of the trial court's instructions accompanying each of the special issues Nos. 40, 41, 42, 43, 44, 45, and 47, which instructions directed the jury as to the form or language in which to frame their answers, whether in affirmative or negative, in response to each of said issues. Special issue No. 40 and its accompanying instructions will serve as illustrations. Special issue No. 40 reads as follows:

"Do you find from a preponderance of the evidence that the total incapacity of the plaintiff, M. V. Mowery, if any, as

a natural result of the accidental personal injury, if any, sustained by him on October 24, 1937, is not temporary?

"If you find from the evidence that the total incapacity of the plaintiff is not temporary, let the form of your verdict be 'His total incapacity is not temporary'; if you find from the evidence that the total incapacity of the plaintiff is temporary, let the form of your verdict be, 'His total incapacity is temporary.' "

Answer: "His total incapacity is not temporary."

The contention, in substance, is that the phrase "If you find from the evidence" contained in the instructions directing the jury as to the form of their answers, by implication had the effect of striking down the charge on the burden of proof, correctly expressed in each of the questions inquiring: "Do you find from a preponderance of the evidence * * *", and put the burden on the appellants of establishing their several defenses presented by said issues; for example, that as to special issue No. 40, the phrase complained of had the effect of requiring the appellants to establish by evidence their defense that appellee's total incapacity "is temporary," and that requiring appellants to so establish their defense of temporary incapacity was error. In answer to the contention appellee cites the case of Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, 316, in which it is said that "the defendant has the burden of establishing by a preponderance of the evidence its defense of partial incapacity," and which appellee contends is authority for his contention that no error was committed in requiring appellants to establish (by evidence less than a preponderance) their defense of temporary incapacity. It is further contended that the phrase complained of carries no stronger implication of withdrawing the burden of proof correctly stated in the question than does the instructions suggested in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956. In the case of Gulf, C. & S. F. Ry. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795. The particular phrase referred to by appellee and found at the conclusion of the suggested instructions contained in the Richardson case was improved upon, if not by implication withdrawn. The instructions contained in the Giun case should in sub-

stance be followed and thus avoid the objection here raised; but failure to do so in the present case has worked no reversible error, for reasons shown below with respect to each of the issues to which the instructions complained of were attached.

Special issue No. 40 should not have been submitted at all, because the opposite of that special issue, involving the same inquiry, had already been submitted in the affirmative in special issues Nos. 6, 9, 25, 26, 33, and 34, to which issues the alleged erroneous instructions were not attached and in answer to which the jury found that appellee's total incapacity was permanent, and that it would continue throughout life. The fact that special issues Nos. 6, 9, 25, 26, 33, and 34 submitted the inquiry phrased affirmatively did not require that the inquiry again be submitted and phrased negatively. Wright v. Traders & General Ins. Co., supra.

Special issue No. 41 inquired whether "partial incapacity," sustained by appellee, if any, is not temporary. In answer to special issues Nos. 10, 27 and 35 (not accompanied by the complained of instructions), the jury found that appellee had not sustained partial incapacity. When the jury found that appellee had not sustained partial incapacity, special issue No. 41 inquiring as to the duration of partial incapacity, if any, became immaterial. See decisions and authorities cited in disposing of appellants' propositions Nos. 1, 2, 3, and 9.

Special issue No. 42 inquired whether appellee's incapacity is not confined solely to both hands. The jury answered this issue in favor of appellants. Therefore appellants were not in any way injured by the alleged erroneous instruction accompanying the issue.

Special issue No. 43 inquired whether appellee's present incapacity is not solely the result of hypertrophic arthritis. This issue was not raised in the evidence. There was no testimony tending to show that appellee's incapacity is solely the result of hypertrophic arthritis. The only testimony tending to show that appellee was in any degree suffering from hypertrophic arthritis was that of appellants' witness Dr. I. Goldbloom who testified that from an X-ray picture of appellee's hands he could see indications of hypertrophic arthritis in the joints of his fingers.

"Q. Whereabouts did he have arthritis? A. In the joints of his fingers, in his phalanges—all fingers.

"Q. Would you attribute it (incapacity) to the burn? A. I will attribute it to the pre-existing arthritis and the burn.

"Q. Both of them, then, from your standpoint are a contributing cause of his condition? A. That is correct."

This testimony not only fails to affirm, but expressly negatives the fact that hypertrophic arthritis is the sole cause of appellee's incapacity. The fact that appellee may have been suffering from pre-existing arthritis and that it contributed to his present incapacity is not sufficient; it must have been the sole cause. Texas Employers' Ins. Assn. v. Parr, Tex.Com. App., 30 S.W.2d 305; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W. 2d 753, affirmed by Com.App. 132 Tex. 172, 123 S.W.2d 314; Armour & Co. v. Tomlin, Tex.Com.App., 60 S.W.2d 204; 45 T.J. p. 492, §§ 98, 186.

Special issue No. 44 inquires whether appellee's present incapacity is not solely the result of pre-existing kidney trouble. The testimony referable to pre-existing kidney trouble is that of appellee who was asked whether he had ever had any trouble with his kidneys prior to the burns, and in response to which he answered: "Not a great deal." He further testified that since the injury he had trouble with his kidneys all the time. There is testimony to the effect that if appellee did have any pre-existing disease of the kidneys, the result of the burns would have the effect of aggravating it, in that from the great amount of skin surface burned the system had suffered loss in power of excretion, or throwing off of poison which from the burned tissue had to be absorbed through the blood and cause injury to the kidneys. There is no testimony that present or pre-existing trouble or disease of the kidneys has in any way contributed to the incapacity of appellee's hands, testified to by all the witnesses, and found by the jury to have resulted from the burns, and upon which the judgment is based.

Special issue No. 45 inquires whether appellee's present incapacity is not the result of a prior injury. The only testimony of prior injury was that of the appellee. He testified that in 1900 (37 years prior to his present injury), "I sprained my wrist a little bit and was off work three days." That in 1925 or 1926 (more than 11 years prior to his present injury), he testified, "I sprained my back a little bit," and was "off work about six days." That in 1936, he testified, "I got some sand in my eye" and went to see Dr. Hurst, and that Dr. Hurst treated it. He further testified that these were the only injuries he had ever received and that he had entirely recovered therefrom. He further testified that he had regularly been employed doing hard manual labor as an oil well driller for forty years prior to his present injury; that he was physically strong and that "nothing was wrong with me" at the time of the injury. His testimony was in some degree corroborated by the fact that he had been at work as an oil well driller for his present employer for more than a year prior to the injury; and by testimony of Dr. J. H. Ross, who was acquainted with appellee prior to and at the time of the injury, and that appellee was then "indeed an active man." The previous injuries, if they could be classed as such, are too minor in nature and too remote in point of time to raise an inference of causal connection between then and the present incapacity. There is no testimony claiming that such injuries contributed to appellee's present incapacity. Texas Employers' Ins. Ass'n v. Heuer, Tex.Civ.App., 10 S.W.2d 756; Texas Employers' Ins. Ass'n v. Parr, supra; Texas Indemnity Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Casualty Reciprocal Exchange v. Dawson, Tex.Civ.App., 81 S.W.2d 284; Traders & General Ins. Co. v. Wyrick, Tex.Civ.App., 118 S.W.2d 923.

Special issue No. 47 inquired whether appellee's incapacity is not solely the result of the ravages of old age or senility. The testimony with respect to this issue shows that appellee is sixty years of age; that prior to his injury he had been working as an oil well driller for forty years; that such was hard manual labor and he had been doing that work for his present employer for seventeen months and twenty-three days prior to his injury; that he was a strong healthy man with steady nerves; that since his injury he is nervous. Dr. Hurst and Dr. Ross, witnesses for appellee, testified that his nervous condition was due to the severe shock from the burns. Dr. I. Goldbloom, witness for appellants, testified: "Q. Now, Doctor, what did you find in this man with reference to anything abnormal in his nervous

system? A. He told me that he had been nervous of late years, that he had felt more nervous since he had been burned. I felt that the nervousness, it was my opinion that the existing nervousness that he had, on account of the character of the nervousness, was due to his age, because this type of nervousness can be only due to certain nervous system involvments, in other words, bring involvment and not due to any cause which affect the extremities."

Dr. McRae, witness for appellants, testified: "It (the nervous condition) is probably a senile thing, coming on with age. However, it can be aggravated a little bit or hastened by trauma."

None of the witnesses testified that old age or senility or the condition of appellee's nerves had or was calculated to contribute to the disability resulting from the burns to appellee's hands. There is no dispute in the testimony of all the witnesses but that the disability of appellee's hands is the direct result of the burns. The dispute is as to the extent of such disability to his hands. As to the burns to appellee's hands the testimony shows: Dr. Hurst testified that a first degree burn involves the skin; that a second degree burn involves the skin and tissue under the skin; that a third degree burn involves the muscles, ligaments and bones underneath; that the burns to both appellee's hands, wrists and forearms below the elbows were second and third degree burns, and had rendered them stiff to where he could not grip or close his hands, thus incapacitating them for the purposes of work; that such incapacity was total and was permanent. To the same effect is the testimony of Dr. Ross. Dr. Goldbloom testified: "I would say that the burns on his arms and hands were of the second degree * * * the burned area extended up both arms, involved the wrists and hands * * * below the elbow, from which plaintiff has sustained about 35% disability in the use of both hands, and about 15% disability to the fingers on both hands."

Dr. McRae testified:

"The result of my examination was this, he (plaintiff) has considerable disability in his hands from which he will not recover."

"Q. In other words, he has some permanent disability in each hand? A. Yes, sir.

"Q. What is your opinion, based upon that examination, now as to the degree or per cent of the loss of the use of his hands? A. About 50%.

"Q. Each hand? A. Yes, sir."

Dr. McRae then itemized the disability to each of his fingers, and gave his opinion as to the extent of the disability to each finger. He further testified:

"Q. I will ask you to state whether or not you formed an opinion as to whether or not the man's disability was confined to the loss of the use of the hands? A. Yes, sir.

"Q. You have already given your opinion relative to that? A. Relative to the burns, the disability caused by the burns is caused by the loss of the use of his hands."

Expressed in other words, all the testimony is in accord that the disability to the hands was caused by the burns.

■ Appellants' propositions 17 and 18 complain of the trial court's action in submitting special issues Nos. 27 and 35, making inquiry, affirmatively phrased, as to whether appellee had sustained partial incapacity of his hands. The contention is made that since appellants would not be obligated to pay as much compensation should the jury have found that such disability was partial, it constituted a ground of defense, and said issues for that reason should have been phrased negatively. The question raised by these propositions was decided adversely to appellants' contention in Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314.

The judgment of the trial court will be affirmed.