## LLOYDS CASUALTY INSURER v. FARRAR et al.

### Nos. 13312, 13339.

Court of Civil Appeals of Texas. Dallas.

Nov. 20, 1942.

Rehearing Denied Dec. 18, 1942.

Sam Holliday, of Houston, for appellant.

Bailey & Shaeffer and White & Yarborough, all of Dallas, for appellees.

YOUNG, Justice.

The suit in the trial court was by Farrar, appellee, surety on a supersedeas bond in another cause where M. V. Mowery, John White and H. J. Yarborough were judgment creditors; the instant proceedings being for contribution and exoneration against Lloyds Casualty Insurer, an alleged "additional surety" in the Mowery appeal. There are, in fact, two records before us: Lloyds having perfected an appeal from the overruling of its plea of privilege; and a further appeal from an adverse judgment on the merits. However, consistent with appellant's rights, and after necessary statement of the rather complicated background of both appeals, the interlocutory order overruling plea to the venue will first be disposed of.

December 4, 1938, in the District Court of Gregg County, and prior to the filing of the suit at bar, one M. V. Mowery obtained judgment on his workmen's compensation claim against the Southern Underwriters and its successor, United Employers Casualty Company, for $6,357.62, a one-third interest being awarded to his attorneys. Defendants in the judgment just described duly perfected appeal to the Court of Civil Appeals at Texarkana, with B. F. Farrar (appellee here) and W.

F. Weatherford as sureties on the supersedeas bond of said defendants. While the record was there pending, the attention of that Appellate Court was called to the fact that surety Weatherford had become insolvent, through motion of Mowery's attorneys, who prayed for posting of additional surety. The motion being sustained, the Court directed defendants, United Employers Casualty Company, et al., to file another and sufficient bond within twenty days from January 18, 1940. Thereafter, within the time, Will R. Saunders, attorney for said insurance companies, procured the execution by Lloyds Casualty Insurer (appellant here) of a supersedeas bond, in part reciting that it was "duly authorized and licensed under the laws of the State of Texas to sign as surety on this bond," payable to Mowery, John White and H. J. Yarborough, his lawyers, and another (who later assigned his interest to the attorneys just named.) This instrument, basis of the present litigation, was for the sum of $14,000, with conditions of liability in terms of the statute. It was executed in Dallas by Warren P. Castle, the resident Deputy Attorney in Fact, and appended thereto was the Power of Attorney of Earl W. Gammage, Statutory Attorney in Fact at Houston, authorizing Castle to execute surety bonds for Lloyds Casualty Insurer. This additional bond was then mailed by Saunders to Mr. Hollingsworth, Clerk of the Texarkana Court of Civil Appeals, who refused to file or approve it on the ground of insufficient evidence to establish the solvency of said surety; replying to Saunders that same was being held "subject to your orders." Mr. Saunders then sent by' messenger to Texarkana, financial statement of his Lloyds surety and a certificate from the Board of Insurance Commissioners, authorizing Lloyds Casualty Insurer to transact a surety business in Texas; and after attachment of such papers to the bond, it was again presented to the Clerk for approval, which was refused. These transactions occurred between the 2nd and 5th of February, 1940. Thereafter, on February 8, 1940, the Texarkana Court of Appeals declined to allow further time for filing additional supersedeas bond, at the same time directing the Gregg County District Court to issue execution on aforesaid $6,357.62 judgment against such insurance companies; and defendant United Employers Casualty Company was written a letter on the same

day by its attorney, Will R. Saunders, that the Lloyds Casualty Insurer bond had not been approved, was not in effect, and that it would be in order for the Company to take down the $1,400 deposit placed with Lloyds in connection with its issuance. A copy of the letter just referred to was mailed to appellant's Deputy Attorney in Fact Castle, who, on the next day, wrote T. E. Gammage at Houston, enclosing the Saunders communication and stating "I am therefore cancelling this bond flat." However, on February 12, 1940, Mr. Saunders filed a motion in the Texarkana Court of Appeals, seeking permission to file a mandamus petition against R. B. Hollingsworth, Clerk, the object being to compel said officer to approve and file the additional bond as a good and sufficient statutory obligation, and as complying with the prior court order of January 18; which motion being denied, said Southern Underwriters, et al., through the same attorney Saunders, on February 14, 1940, filed in the Supreme Court of Texas a similar motion for permission to institute mandamus proceedings against the Judges of the Texarkana Court of Appeals and Clerk Hollingsworth; the sole object thereof being to compel recognition of the additional bond on which Lloyds Casualty Insurer was surety, as a sufficient instrument of supersedeas in fact and in law; with prayer for temporary injunction until hearing on the merits. To this petition was affixed the affidavit of Saunders, reciting in part, that the "matters of fact contained therein are true." On the same day, the Supreme Court granted relators permission to file the petition, and issued its temporary injunction that respondents therein "be restrained until the further orders of the Supreme Court of Texas from taking any steps to issue or levy execution upon the judgment of the District Court of Gregg County, Texas, mentioned and identified in said petition and application for mandamus, and the Clerk of the District Court of Gregg County, Texas, is directed to refrain from issuing any execution on said judgment until the further orders of this Court, and all persons are restrained from levying execution, if same has been issued." By further recitals in the order, however, the Texarkana Court was not enjoined from deciding the merits of the appeal. No bond was required for the issuance of the above temporary injunction, pending a later hearing on the mandamus.

It should here be noted that Messrs. White and Yarborough, attorneys for Mowery, contested the sufficiency of such additional bond by letters to Hollingsworth, Clerk, and by motions before the Texarkana Court, attacking the solvency of Lloyds Casualty Insurer and the authority of Deputy Castle to sign it, appending to their motion of February 5, 1940, a telegram from the Board of Insurance Commissioners, stating in substance that Earl W. Gammage was the only Attorney in Fact for Lloyds Casualty Insurer, and that its guaranty fund was $70,000, composed of stock of T. E. Gammage & Sons, Inc., Houston.

As late as May, 1940, these attorneys wrote Mr. Hollingsworth, Clerk, calling attention to Art. 5020, R.S., Vernon's Ann. Civ.St. art. 5020, providing that a surety Company, such as Lloyds, could write risks only up to one-tenth of its assets, claiming the particular additional bond of $14,-000 void in the light of the telegram above mentioned.

By way of sequence, we should further state that on February 2, 1940, after Deputy Attorney in Fact Castle had signed the additional bond, Lloyds Casualty Insurer at once reinsured with Lawyers' Lloyds of Texas all excess on the bond above $7,000, said reinsurer operating under the supervision of the State Board of Insurance Commissioners and licensed to transact such business in Texas.

Going back to the Texarkana case of Southern Underwriters et al. v. Mowery, the Appellate Court there required still another bond on which to base the appeal, and on February 26, 1940, the National Surety Corporation became surety on a cost bond filed by the principals therein, and the cause was affirmed on January 14, 1941, rehearing denied February 6; 147 S.W.2d 834; and writ of error dismissed for want of merit in the Supreme Court March 12 thereafter. The mandamus proceedings of Southern Underwriters et al. were dismissed in the Supreme Court on March 8, 1941, at the instance of petitioners, or relators, at their cost; and on March 18, 1941, said United Employers Casualty Company was itself placed in receivership by the Fifty-third District Court at Austin, with Will G. Knox, Statutory Conservator; and for purpose of clarity, we should state that Southern Underwriters, the original insurer under workmen's compensation of Mowery's employer, Stroud Tool & Cable

Company, had transferred its assets to United Employers Casualty Company before judgment; both being reciprocal insurance associations perforce of Title 78, Art. 5013, Vernon's Ann.Civ.St. art. 5013, Lloyd's Plan.

After aforesaid Mowery judgment became final and the Supreme Court injunction dissolved, said judgment-holders (including White and Yarborough, in a one-third interest) caused issuance of execution from the Gregg County District Court, and, finding the principal on the supersedeas bond insolvent, succeeded in collecting $1,500 from appellee Farrar, as surety on the first bond. Farrar then brought this action in the nature of a Bill in Equity, defendants being the judgment creditors, Mowery, White and Yarborough, also Lloyds Casualty Insurer, as co-surety on the second or additional bond; claiming same to be a valid and binding obligation, under which Lloyds was liable for one-half of the Mowery judgment; alleging that prior to the date of said additional bond and before receivership, United Employers Casualty Company had assigned to Lloyds a large amount of premium accounts as collateral and indemnity for any liability by reason of its execution of supersedeas or other bonds for United Employers Casualty Company from time to time; that said uncollected accounts and funds on hand from their collection were largely in excess of the Mowery debt and constituted trust funds which should be resorted to for payment of the judgment before levying execution against property of plaintiff Farrar; his assets consisting largely of real estate equities that would be sacrificed under forced sales, and he rendered insolvent, if defendants Mowery, White and Yarborough were not required by law to first seek reimbursement from aforesaid trust funds and premium accounts of United Employers Casualty Company. The answer of Mowery, White and Yarborough included a cross-action against Lloyds Casualty Insurer on the additional bond, and estoppel on the part of Lloyds to deny liability; and defendant Lloyds, generally answering all charges, alleged non-execution of the bond and lack of authority in such connection; also lack of consideration, or that same had failed, and estoppel of the complaining parties to claim liability against it.

The judgment here appealed from, on a trial to the court, found: (1) The additional bond to be a valid and subsisting obligation; that Lloyds Casualty Insurers and Farrar were co-sureties between themselves, each liable for one-half of the Mowery judgment; Farrar being entitled to recover from Lloyds one-half of the $1,500 theretofore paid by him; (2) that the trust funds or collateral security held by Lloyds Casualty Company of premium accounts in amount of $100,000 (under contracts with United Employers Casualty Company and its Receiver, Will G. Knox), should first be applied to the exoneration of the Mowery judgment and debts of like class, before undertaking execution against Farrar; allowing Mowery, White and Yarborough recovery for the balance due them, but restraining the latter parties from levying execution against Farrar until the instant decree should become final as against appellant Lloyds.

The plea of privilege of the defendant just named was in statutory form, alleging that it was not a corporation, but an association organized and doing business under the Lloyds Plan, through an attorney in fact with office and residence in Houston, Harris County; while the controverting affidavits thereto asserted venue in Dallas County under Subds. 4, 23 and 29a, Art. 1995, Vernon's Ann.Civ. St., in that, the bond sued on was executed and delivered in the latter county and was the place where the instrument was breached; Dallas County also being the residence of White and Yarborough, necessary party defendants. Concerning the overruling of its plea of privilege, appellant contends that neither the plaintiff Farrar nor cross-plaintiffs (White and Yarborough) had any cause of action against it, hence no "part thereof" (Subd. 23) could arise in Dallas County; and that plaintiff had not proved any cause of action against defendants White and Yarborough, which, of itself, would give venue to such cause in the particular county. And so closely related, in testimony and applicable law, is appellant's plea of privilege record to the trial in chief, that it is here proper to outline the gist of its twenty-four points complaining of the adverse judgment under review: They are, (1) that from undisputed evidence, delivery of the additional bond was never completed; there was no acceptance of it, and the same was a nullity; (2) appellant, not being a corporate surety under Art. 4970, the Clerk's refusal of the bond was well within his discretion; (3) under Art. 5020, R.S., prohibiting a Lloyd's surety

from assuming risks exceeding one-tenth of its net assets, the proof submitted to the Clerk was at least doubtful, and that officer was fully authorized to reject it; (4) no consideration for its issuance, because all delay in issuing execution was due to forbearance of Mowery's attorneys, White & Yarborough, with whom plaintiff Farrar was in privity; (5) estoppel of plaintiff and cross-plaintiffs to claim liability, Farrar being bound by the acts of the judgment-holders in the bond's disapproval; (6) res adjudicata, by reason of the adverse ruling of the Texarkana Court on the mandamus proceedings there filed.

It is at once apparent that appellant's defenses in the trial court and above points of error are wholly inconsistent with the recitals of its own additional surety bond as tendered in the Texarkana Court; and with the further representations of Attorney Saunders before the Supreme Court, an excerpt from his written argument being: "In this case before Your Honors, a mere reading of the Relators' allegations shows that they have suffered and are now suffering injuries for which they have no relief other than the relief sought herein. Your Relators *have already deposited a bond* with the Respondent, Hollingsworth, and therefore, if the relief prayed for by them is granted, the Respondents, Mowery, White, Yarborough and Mosely, as well as the Respondent Hollingsworth, cannot be injured, until the matter is finally determined on the merits, since they, the Relators, have given all that the law requires them to give—*a bond, executed by a good and sufficient, solvent surety company,* incorporated and operating under the Lloyds insurance laws of Texas, with the express approval of and a permit from the Insurance Department of the State of Texas, clearly evidenced by such permit, as well as the allegations in the Relator's application, that said surety company has complied with all the insurance laws of the State of Texas." (Italics ours)

Perforce of the above representations, as reflected in the mandamus petition of appellant's principal, the latter secured a stay of execution which continued for all practical purposes until Mowery's judgment had been affirmed in our highest tribunal by dismissal for want of merit; and the record discloses that, except for the Supreme Court action on aforesaid mandamus, the Gregg County judgment *would have been collected from the principal debtor*—United

Employers Casualty Company. Now, if the advantages just stated, adverse to all appellees, were obtained with the knowledge and consent of appellant; or if Saunders, for his principal, had implied or even ostensible authority to take whatever measures deemed necessary in securing approval of the additional bond, the surety thereon (Lloyds) became a virtual party to the main litigation, and is precluded from asserting its present defenses by applicable rules of estoppel.

One who assumes and successfully maintains a certain position in a legal proceeding, cannot afterward assume a contrary position simply because his interests have changed; especially so, if it is to the prejudice of another who has been required to acquiesce in the position formerly taken—the parties and questions involved being the same. 19 Am.Jur., Estoppel, Sec. 72, p. 704; 17 T.J., Sec. 6, p. 134; Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269; Bond v. Kirby Lumber Co., Tex.Civ.App., 47 S.W.2d 891. Equally in point is the general principle that "By executing an appeal or supersedeas bond, and thereby in fact obtaining the contemplated benefits pending the disposition of the appeal, the parties may estop themselves from asserting certain defenses to liability on the bond. * * * Where appellant has obtained the benefit of an appeal, he and his sureties are estopped to question the sufficiency or validity of the appeal or supersedeas bond. * * *" 31 C.J.S., Estoppel, § 110, pp. 353, 354; Clay v. Richardson, Tex.Civ.App., 9 S.W.2d 413. The detriment to appellees in stay of execution is sufficient consideration for the particular undertaking (though wanting in statutory requirements; Arts. 2270, 2272), if otherwise enforceable as a common law obligation. See also annotation to Haffner v. Commerce Trust Co., 120 A.L.R. 1062.

In applying above principles to the case at bar, these further facts must be included: (1) Appellant knew of the Texarkana mandamus petition and its denial by that Court, but disclaimed any knowledge or information concerning the Supreme Court proceedings until February, 1941; and, when advised of it by Saunders, demanded its dismissal in connection with payment to the latter of a $3,000 deposit, following disposal of other United Employers litigation; (2) cancellation of appellant's additional bond, and return of the $1,400 deposit for its issuance, *were office transactions, not*

*openly disclosed* so far as we can determine, until date of trial, November 1941; (3) after aforesaid bond was "canceled flat," as testified by Castle, no request for its withdrawal and return to appellant was ever made; and custody of the instrument has remained and continued with the Court Clerk at Texarkana to this day.

It occurs to us that if appellant had but notified Hollingsworth to return the bond, a usual procedure on cancellation, that official (who was a party to the Austin mandamus) could have promptly apprised the Supreme Court of the fraudulent suit there pending, for it was nothing else, if appellant's contentions be correct.

■■■ Referring generally to appellant's plea of nonliability, the bond in question was executed for but one purpose, i. e., to procure a stay of the Mowery judgment. And by delivery thereof to the principal on the bond, with intent that it should be made use of as an instrument of supersedeas, we think said principal, United Employers Casualty Company, and its attorney were thereby clothed with actual authority to take such measures as were necessary to secure approval of same, even to the mandamus actions already mentioned. If we be in error as to this, then appellant is bound by the apparent authority of Saunders to effectuate the same result; an apparent agent being one that the principal (in this instance, Lloyds Casualty Insurer), either intentionally or by want of ordinary care, induces third persons to believe to be its agent, although neither express nor implied authority has been conferred. Continental Oil Company v. Baxter, Tex.Civ. App., 59 S.W.2d 463. Another form of the equitable rule just stated is estoppel by negligence; appellant having entrusted the instrument to attorney Saunders generally for purposes of supersedeas in the particular appeal, without exercising any effort to repossess it for cancellation; 19 Am.Jur., Estoppel, Sec. 66 et seq., p. 694; "When one of two persons equally entitled to consideration must suffer from delinquency of third person, loss falls upon him who, having readily at hand means of protection, fails to avail himself of them." Parma v. Bank of Cameron, Tex.Com.App., 63 S.W. 2d 692, Syl. 2.

But if, as appellant contends, knowledge of these Supreme Court transactions was prerequisite to an estoppel, which Messrs. Gammage and Castle positively testify they did not have, yet other cogent facts and circumstances appear in the record, from which the court could have determined the existence of knowledge. For instance, during the hearing, Mr. Holliday, appellant's counsel (also attorney for Knox, Receiver) produced the Mowery trial file of the defunct United Employers Casualty Company, pursuant. to a verbal agreement with plaintiff, for purpose of refreshing the memory of a witness then testifying. This file was being used for such purpose, but, during a recess, it was withdrawn and placed beyond reach of process. Said file at the time was a part of the receivership records, and we perceive no reason why its contents, or any information therein, should not have been legally available to all parties, if material; and adverse inferences might well be drawn from the incident on the issue of knowledge. 17 T. J., Evidence, Civil Cases, Sec. 86, p. 302 and Notes. Similarly, a contract was shown to be in existence, dated February 29, 1940, whereby United Employers' Casualty Company assigned to appellant a large amount of premium accounts to further secure the latter for its execution of numerous surety bonds. Appellant's counsel successfully opposed the introduction of this contract in evidence. However, a renewal thereof does appear in the record, executed April 24, 1941, between appellant and Knox, Receiver for United Casualty assets, wherein the previously assigned collateral was reassigned to the Receiver for collection, the funds derived therefrom to be deposited and disbursed jointly. A preliminary paragraph of this last agreement clearly indicates that recitals were contained in the writing of February, 1940, naming the Lloyds bond in the Mowery case as a contingent liability; the contract with Receiver Knox being, that outstanding bonds of appellant in certain cases should have a "first classification" and be first paid off out of assigned securities; which collateral was in a gross amount of $100,000 at the time, or some $50,000, according to Gammage, at time of trial. In paragraph 5 of this existing contract with Receiver Knox, appellant expressly stipulated that its bond in the Mowery suit should be placed in the "first classification," provided suit be filed thereon in six months; and this action was instituted within that time.

It would thus appear that, not only do various facts and circumstances infer knowledge to appellant of the uses made of its bond by the principal debtor at all ma-

terial dates, but that it has recognized liability thereon, at least to the extent of aforesaid pledged accounts.

■ Appellant argues that cross-plaintiffs are themselves estopped because they contested approval of the bond; but the applicable rule is stated in Smith v. Chipley, Tex.Civ.App., 42 S.W.2d 645, 647, quoting from 21 C.J., Sec. 233, p. 1229: "In order to work an estoppel the position assumed in the former trial must have been successfully maintained." To the contrary, the obligees in the bond were compelled to accept it by action of the Supreme Court. Neither was there any privity between Farrar, White and Yarborough, plaintiffs' interest being decidedly favorable to any additional security; not only this, but Farrar's testimony shows him to have had no notice of the contest, his only information being from Saunders that Lloyds' bond had been substituted for his own.

■ Appellant's bond was found to be a good common law obligation by the trial court, and its rendition must be upheld if based upon any warrantable theory raised by the evidence. Consequent upon the relationship of co-surety so determined is plaintiffs' right of contribution; also his right to benefit of the indemnity received by his co-surety from the principal. Glasscock v. Hamilton, 62 Tex. 143; Lacy v. Rollins, 74 Tex. 566, 12 S.W. 314; Moore v. Hanscom, Tex.Civ.App., 103 S.W. 665, modified 101 Tex. 293, 106 S.W. 876, 108 S.W. 150. The cause of action or a "part thereof" (Subd. 23) arose in Dallas County, where appellant's bond was executed and delivered as an additional supersedeas. Moreover, plaintiffs' equity suit was in the nature of a bill quia timet; and necessarily impleaded the judgment creditors for the purpose of compelling them to first resort to the fund created by the principal for the exoneration of both sureties, as well as for collection of a one-half liability from appellant. Pomeroy Eq.Jur., 5th Ed., Sec. 1418, p. 1071; Pomeroy, Equitable Remedies, Vol. 2, p. 1490. It was properly laid in Dallas County (residence of White and Yarborough) under both Subds. 4 and 29a, Art. 1995. Relative to the instant procedure, the following from Leslie v. Griffin, Tex.Civ.App., 23 S.W.2d 534, is pertinent: "Under the broad equity powers of the court, where no adequate relief at law under the particular circumstances was afforded, and to avoid a multiplicity of suits, the court properly permitted the appellants to be joined * * * that full relief in the premises might be granted."

■ Will G. Knox, Receiver of United Employers' assets, was not made a party hereto; due, as appellees say, to belated information concerning the receiver's 1941 contract with appellant; but the defect is not material. Our conclusions simply establish the Mowery judgment as one of "first classification" under such contract, which the Receiver is already duty bound to perform, and with which the judgment under review is entirely consistent.

All assignments and points raised by appellant, both on plea of privilege record and to the merits, have been fully considered and are overruled; with the result that aforesaid venue order and final judgment are severally affirmed.

Affirmed.

BOND, Chief Justice (dissenting).

The mere reading of the related history of this litigation in the majority opinion shows conclusively that plaintiffs' alleged cause of action was not maintainable in the District Court of Dallas County, Texas, as against defendant's plea of privilege, for the primary reason that the pleadings and proof show the absurdity of plaintiffs' alleged cause of action.

The plaintiff Farrar (appellee here) was a surety on a supersedeas bond for Southern Underwriters and United Employers Casualty Company on appeal to the Texarkana Court of Appeals, from a judgment in favor of one M. V. Mowery, obtained in a District Court of Gregg County, Texas, in which the firm of White & Yarborough, attorneys, was awarded an interest. The Texarkana Court, on motion of said appellees, ordered the appellant, Southern Underwriters, and its successor, United Employers Casualty Company, to execute an additional supersedeas bond, because of insufficiency of the bond on which Farrar was a surety. In an effort to comply with said order, the Southern Underwriters and United Employers Casualty Company, within the time prescribed by the court, executed another bond with Lloyds Casualty Insurer (appellant here) as a surety, payable to the appellees and conditioned under the terms of the statute as a supersedeas. This bond was forwarded to the Clerk of the Texarkana Court, who refused to approve it, and on

motion of said appellees, Mowery, White & Yarborough, the Texarkana Court made an order directing its Clerk not to approve or file the bond. Whereupon, the Southern Underwriters and United Employers Casualty Company, appellants on the appeal, applied to our Supreme Court for privilege to file application for writ of mandamus against the Texarkana Court and its Clerk, to compel that Court to approve and file the bond and to stay by injunction the execution of the judgment. The ground alleged for the mandamus and injunctive relief was to the effect that the bond on which Lloyds Casualty Insurer was surety was sufficient for the purposes of supersedeas. The surety, Lloyds Casualty Insurer, was not a party to the application and only its solvency was the basis for the complaint filed with the Supreme Court by appellants in the Texarkana Court of Appeals. On consideration of the petition, the Supreme Court allowed the filing thereof, stayed the execution on the judgment pending hearing on the merits of the petition, and set the application for assignment at a future date. In the meantime the appeal was decided (147 S.W.2d 834), the surety, Lloyds Casualty Insurer withdrew its suretyship on the proposed bond; and thereafter the Supreme Court dismissed the petition. Thus it will be seen that the bond never became an active force in the litigation.

I cannot relate how it could be determined that Farrar, a surety on the first bond, which, in fact, superseded the judgment, has a cause of action for contribution against the surety, Lloyds Casualty Insurer, on a bond that was never approved or filed in said cause; or how the named obligees in the bond, Mowery, White & Yarborough, who refused to accept the purported obligation, protested its approval and filing, on the ground that it was illegal and insufficient, can now seriously contend that liability attaches to the surety under the related facts in this case. Manifestly, the bond was not a valid and subsisting obligation, conferring venue in Dallas County, or that the bond could be the basis of a cause of action, or any part of a cause of action, arising in Dallas County, as grounds for overruling the defendant's plea of privilege and entering judgment in plaintiffs' favor. Farrar was bound for the judgment of more than $6,000 and paid only $1,400; then how could he recover for contribution against other bondsmen, if equally liable?

It is not fair to say that our Supreme Court, in effect, approved the bond by granting applicant a privilege to file a petition for mandamus against the Texarkana Court of Appeals and staying execution on the judgment. Such privileges are usually granted on the prima facie showing in the applicant's petition and, in granting the privilege, the order in no way binds the obligors of the bond which is merely the basis of the petition. The bond becomes only an active force in the suit when same is ordered approved and, in fact, is approved and filed in the court having jurisdiction of the appeal. The majority seems to hold that a surety on a bond is liable for the acts of the principal on the bond, done outside the conditions of the bond, in that, because forsooth the principal made application to the Supreme Court for mandamus on the ground that the surety is solvent and the bond sufficient for the purposes of its execution, the surety thereby became liable for the acts and conduct of the principal. The absurdity of such a position is apparent. The obligation of a surety is limited to the conditions of the bond, so where the bond is not approved, or becomes effective for the purposes of its execution, no liability can attach to the surety on account thereof.

The venue of the alleged cause was retained in Dallas County on the sole ground that "a part of plaintiffs' cause of action arose in Dallas County," and that White & Yarborough being resident citizens of Dallas County, venue lies in Dallas County. I am unable to determine what "part" of the alleged cause of action arose in Dallas County, or what cause of action is alleged and proven triable in any county. It is evident that the suit is merely an attempt to make the Lloyds pay for something it is not legally liable to pay, because the judgment creditors are unable to collect from those liable for their indebtedness. The Lloyds' bond never superseded the execution on the judgment, and no act of the surety, directly or remotely, caused damage to appellees herein, hence no liability exists. I respectfully dissent from the majority in fastening liability on bondsmen who were willing to be bound, but prevented by the parties (appellees) who now, because of the ill-fated insolvency of their debtor, seek the liability.

The full facts having been revealed by the record, the judgment of the court below should in all things be reversed and here rendered for appellants.